# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| SPRING STREET APTS WACO, LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 6:16-CV-00315-RP-JCM |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY AND CRAWFORD & COMPANY, | § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Spring Street Apts Waco, LLC (hereinafter "Plaintiff"), and files this Plaintiff's First Amended Petition, complaining of Defendants Philadelphia Indemnity Insurance Company (hereinafter "Philadelphia"), Crawford & Company (hereinafter "Crawford") (hereinafter referred to collectively as "Defendants"). In support of its claims and causes of action, Plaintiff would respectfully show the Court as follows:

### PARTIES

1. Plaintiff Spring Street Apts Waco, LLC, is a Texas limited liability company located at 4419 Buena Vista Street, Apartment 13, Dallas, Texas 75205 and does business in McLennan County, Texas. It owned the apartment community located in McLennan County known as The Hype Apartments (the "Property").

2. Defendant Philadelphia is a Philadelphia corporation doing business in Texas writing insurance policies and providing insurance coverage to businesses, and/or handling insurance

claims. This includes the Commercial Lines Policy PHPK1018591 (the "Policy"), which applies to the subject Property, and is at issue in the present case. Philadelphia may be served by serving the Texas Commissioner of Insurance, PO Box 149104, Austin, Texas 78714.

3. Defendant Crawford & Company is a Georgia corporation doing business in Texas adjusting insurance claims. Crawford may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701, or any other place that said agent for service may be found.

**JURISDICTION AND VENUE**

4. This case was originally filed in the District Court of McClennan County, Texas and all the claims asserted arose under state law. Defendant, Philadelphia, removed the action asserting federal diversity jurisdiction pursuant to 28 U.S.C. § 1332.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omission giving rise to the claim occurred in this district and the Property that is the subject matter of this suit is situated in this district.

**NATURE OF THE CASE AND BACKGROUND FACTS**

6. This is a first party insurance dispute regarding the extent of damages and amount of loss suffered at the Property in this matter. In addition to seeking damages from Philadelphia, Plaintiff also seeks compensation from Crawford and its adjusters for damages caused by improperly evaluating the extensive losses associated with this case.

7. Plaintiff owned the Property known as The Hype Apartments, located at 1601 Spring Street, Waco, Texas 76704.

8. In 2013, Plaintiff purchased the Policy from Philadelphia to cover the Property for loss due to wind and rain, among other enumerated perils for the period from May 7, 2013 to May 7,

2014. Pursuant to its obligations as a policy holder, Plaintiff made complete payment of all commercial insurance premiums in a timely fashion.

9. On or around March 28, 2014, a severe weather event struck Waco, Texas, and its surrounding counties and towns. Extraordinary and sustained winds, and strong gusts, endured at the ground level. Accordingly, the Property, the subject of this lawsuit, suffered significant damage due to the weather event.

10. In the aftermath of the weather event, Plaintiff submitted a claim to Philadelphia against the Policy for roof damage and water damage the Property sustained as a result of the weather event. Plaintiff sustained extensive damage to the roofs, exteriors, interiors and structures of twenty-five (25) of its buildings as well as its office and clubhouse.

11. Philadelphia assigned Crawford to adjust the claim. Crawford adjusted Plaintiff's claim by investigating, processing, evaluating, approving, and/or denying, in whole or in part, Plaintiff's claim.

12. Crawford, through its agents, conducted a substandard inspection of Plaintiff's property. The inadequacy of Crawford's inspection can be seen in many areas, including the report done by the engineers hired by Crawford (the "Donan Report").

13. Among other deficiencies, the Donan Report only searched for reports of severe weather for the one day before Plaintiff filed its claim, April 14, 2014, and for 15 days after the claim was filed. No search was done for severe weather on the dates preceding the date on which the damage was reported.

14. The Donan Report further misrepresented a conversation that its engineer had with Plaintiff's representative, Mr. John Harvey. The Donan Report alleges that Mr. Harvey stated that

3

a hail storm passed through the area in late April, which he believed to have caused the damages to the Property. However, Mr. Harvey unequivocally denies making these statements.

15. With respect to the damage to the Property, the Donan Report unreasonably used a limited definition of what constitutes wind damage. The Donan Report stated that for wind damage to be present, shingles must have been missing, torn or creased. Using only such characteristics as indicators of wind damage fails to take into account "violated seal strips," which every manufacturer of shingles agrees is often the result of wind force. By making no attempt to examine shingles that were not "missing, torn or creased," the Report missed 90% of the wind damage to the Property.

16. The Donan Report further failed to address any damage to the interior of the property. It is standard practice for both adjusters and forensic engineers to examine interiors for damages when a property has as much widespread roof damage as was present when the Donan engineers examined the Property. Any engineer and adjuster would know the likelihood for interior damage is high when there is substantial roof damage like there was on the Property.

17. Finally, the Donan Report improperly reported that the current condition of the roofs on the Property was due to long-term exposure to the elements, when it was not.

18. These deficiencies with the Donan Report, among others, were brought to Philadelphia's attention in Plaintiff's December 10, 2014 correspondence to Philadelphia. Included in this correspondence was an engineering report prepared by ProBuilders of the Carolinas and Daniel C. Smith, PE. (the "Smith Report"). The Smith Report made all of the problems with the Donan Report clear to Defendants.

19. However, despite these deficiencies being brought to Philadelphia's attention, Philadelphia ignored Plaintiff's engineering report and continued to unreasonably resist paying the claim, making a fair settlement offer, or denying coverage pursuant to the policy terms.

20. In June 2015, over a year after Plaintiff reported its loss and nine months after Plaintiff replaced the roofs to its apartment buildings and leasing office, Philadelphia hired Haag Engineering to conduct another inspection of the Property.

21. Haag Engineering—observing only (a) photographs depicting the condition of the Property of the roof and (b) the original roof which was still in place atop freestanding mailbox kiosks on the Property—prepared another report (the "Haag Report").

22. Like the Donan Report, the Haag Report contained numerous deficiencies including notions contradictory to Haag's own published forensic guidelines and national standards for conducting forensic examinations.

23. Specifically, the Haag Report's conclusion that there was man-made damage because loose nails were lying nearby is refuted by any roofer who knows that loose nails are regularly left behind when roofers make temporary repairs. Indeed, there were only one or two loose nails even documented in the Haag Report on the Property.

24. Moreover, the Haag Report (a) failed to account for loose seal strips, (b) concluded that there was no water intrusion to the attic spaces after examining only one attic space, (c) relied on weather data that was clearly refuted by Doppler Radar data, and (d) relied on clearly inadequate photographs to produce an opinion on the wind damages in the interior and edge wind zones.

25. Again, Plaintiff brought these deficiencies to Philadelphia's attention through its Supplemental Report of Findings by Daniel C. Smith, PE. However, again, instead of making adequate payment of the claim, seeking a reasonable settlement or denying coverage, Philadelphia

has, in bad faith, after over a year of obtaining the Haag Report, pursued a baseless counterclaim against Plaintiff for fraud.

## SUMMARY OF FACTS

26. In the aftermath of the severe weather event, Plaintiff relied on Philadelphia and Crawford and its adjusters to help begin the slow and painful repair process. By and through the Policy with Philadelphia, Plaintiff was objectively insured for the subject losses in this matter.

27. Despite Plaintiff's efforts, Philadelphia continually failed and refused to pay Plaintiff in accordance with its promises under the Policy. Despite Plaintiff providing Philadelphia with damage estimates and damage reports, at least some of which Philadelphia agreed with, Philadelphia offered Plaintiff only a fraction of its policy proceeds.

28. Moreover, Philadelphia failed to make any attempt to settle Plaintiff's claims in a fair manner, although its liability to Plaintiff under the Policy is without dispute. Instead, Philadelphia has chosen to largely ignore the numerous damage estimates, reports, and explanations provided to it by Plaintiff. Indeed instead, Philadelphia is pursuing a fraud claim against Plaintiff in further bad faith.

29. In the months following the filing of its claim, Plaintiff provided information to Philadelphia and Crawford, and gave Philadelphia and Crawford opportunities to inspect the Property. Crawford, however, failed to conduct a fair investigation into the damage to the Property. Crawford failed to properly inspect the Property and their related damages, failed to properly request information, failed to properly investigate the claims, failed to respond to requests for information from Plaintiff, failed to timely evaluate the claims, failed to timely estimate the claims, and failed to timely and properly report to Philadelphia and make recommendations to it with regard to Plaintiff's claims.

30. Despite the Defendants' improprieties, Plaintiff continued to provide information regarding the losses and the related claims to Crawford and Philadelphia. Further, Plaintiff made inquiries regarding the status of the losses, and payments. Regardless, Crawford failed to properly adjust the claims and the losses. As a result, to this date, Plaintiff has not received proper payment for the claims, even though notification was provided shortly after the loss.

31. Defendants have failed to sufficiently explain the reasons for their refusal to offer adequate compensation for the damage to the Property. Philadelphia did not communicate that any future settlements or payments would be forthcoming to pay the entire losses covered under the Policy.

32. Defendants have further failed to affirm or deny coverage within a reasonable time. Plaintiff also did not receive timely indication of acceptance or rejection regarding the full and entire claim in writing from any of the Defendants in a timely manner.

33. Philadelphia has, to date, refused to fully compensate Plaintiff under the terms of the Policy that Plaintiff paid for, even though it was Philadelphia that failed to conduct a reasonable investigation. Despite Plaintiff pointing out deficiencies in Defendants' investigation, Defendants continue to rely solely on their own unreasonable investigation. Ultimately, Defendants performed a result-oriented investigation of Plaintiff's claims that resulted in an unfair, biased and inequitable evaluation of Plaintiff's losses.

34. Defendants have failed to meet their obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claims, beginning an investigation of Plaintiff's claims, and requesting all information reasonably necessary to investigate Plaintiff's claims within the time period mandated by statute.

35. As a result of the above issues, Plaintiff did not receive the coverage for which it had originally contracted with Philadelphia. Unfortunately, Plaintiff has therefore been forced to file this suit in order to recover damages arising from the above conduct, as well as from the unfair refusal to pay insurance benefits. As indicated below, Plaintiff seeks relief under the common law, the Deceptive Trade Practices-Consumer Protection Act and the Texas Insurance Code.

## CAUSES OF ACTION

### Count I - Negligence

36. Plaintiff hereby incorporates all above paragraphs as if fully set forth herein.

37. Defendants owed a legal duty to Plaintiff to properly adjust the structural loss, property damage and other insurance losses associated with the Plaintiff's commercial Property. Defendants breached this duty in a number of ways, including but not limited to the following:

   a. Defendants were to exercise due care in adjusting and paying policy proceeds regarding Plaintiff's commercial property loss;

   b. Defendants had a duty to competently and completely handle and pay all damages associated with Plaintiff's commercial Property; and/or

   c. Defendants failed to properly complete all adjusting activities associated with Plaintiff.

38. Defendants' acts, omissions, and/or breaches directly and proximately caused damage to Plaintiff.

### Count II – Breach of Contract

39. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

40. According to the Policy, Philadelphia had the absolute duty to investigate Plaintiff's damages, and to pay Plaintiff's policy benefits for claims made due to the extensive damages caused by the severe weather event.

41. As a result of the severe weather event, Plaintiff's Property suffered severe external and internal damages, and Plaintiff suffered additional business losses.

42. Despite objective evidence of such damages, Defendants have breached their contractual obligations under the subject insurance policy by failing to pay Plaintiff's benefits relating to the cost to properly repair Plaintiff's Property, as well as for related losses. As a result of this breach, Plaintiff has suffered actual and consequential damages.

### Count III – Violations of Texas Deceptive Trade Practices Act and Tie-In-Statutes

43. Plaintiff hereby incorporates by reference all facts and circumstances set forth in the foregoing paragraphs.

44. Defendants' collective actions constitute violations of the Deceptive Trade Practices Act ("DTPA"), including but not limited to Sections 17.46(b)(12), 17.46(b)(14), 17.46(b)(20), 17.46(b)(24), and Section and 17.50(a)(4) of the Texas Business and Commerce Code.

45. Defendants collectively engaged in false, misleading, or deceptive acts or practices that included, but were not limited to:

    a. Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

    b. Failing to disclose information concerning goods or services which were known at the time of the transaction, and the failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had such information been disclosed;

    c. Using or employing an act or practice in violation of the Texas Insurance Code;

    d. Unreasonably delaying the investigation, adjustment and resolution of Plaintiff's claims;

    e. Failing to properly investigate Plaintiff's claims; and/or

9

  f. Hiring and relying upon a biased engineer and/or adjuster to obtain a favorable, result-oriented report to assist Defendants in low-balling and/or denying Plaintiff's claim.

46. Defendants represented to Plaintiff that the Policy and Defendants' adjusting and investigative services had characteristics or benefits that they actually did not have, which entitles Plaintiff to recover under DTPA Section 17.46(b)(5).

47. Defendants represented to Plaintiff that the Policy and Defendants' adjusting and investigative services were of a particular standard, quality, or grade when they were of another, in violation of DTPA Section 17.46(b)(7).

48. By representing that Defendants would pay the entire amount needed by Plaintiff to repair the damages caused by a severe wind event and then not doing so, Defendants have violated Sections 17.46(b)(5), (7), and (12) of the DTPA.

49. Defendants have breached an express warranty that damage caused by a severe wind event would be covered under the subject insurance policies. This breach entitles Plaintiff to recover under DTPA Sections 17.46(b)(12) and (20) and 17.50(a)(2).

50. Defendants' actions, as described herein, were unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree. Defendants' unconscionable conduct entitles Plaintiff to relief under DTPA Section 17.50(a)(3).

51. Defendants' conduct, acts, omissions, and failures, as described in this First Amended Petition, constituted unfair practices in the business of insurance in violation of DTPA Section 17.50(a)(4).

52. Plaintiff was a consumer, as defined under the DTPA, and relied upon Defendants' false, misleading, and deceptive acts and practices to its detriment. As a direct and proximate result

Case 6:16-cv-00303-RP-JCM Document 25 Filed 12/16/16 Page 11 of 19

of Defendants' collective acts and conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiff now sues.

53. All of the above-described acts, omissions, and failures of Defendants are a direct and proximate cause of Plaintiff's damages.

54. Because Defendants' collective actions and conduct were committed knowingly and intentionally, Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages, for Defendants having knowingly committed their conduct. Additionally, Plaintiff is ultimately entitled to recover damages in an amount not to exceed three times the amount of mental anguish and actual damages due to Defendants having intentionally committed such conduct.

55. As a result of Defendants' unconscionable, misleading, and deceptive actions and conduct, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on their behalf. Accordingly, Plaintiff also seeks to recover its costs and reasonable and necessary attorneys' fees as permitted under Texas Business and Commerce Code Section 17.50(d), as well as any other such damages to which Plaintiff may show itself to be justly entitled at law and in equity.

### Count IV - Violations of Texas Insurance Code

56. Plaintiff hereby incorporates by reference all facts and circumstances set forth in the foregoing paragraphs.

57. Defendants' actions constitute violations of the Texas Insurance Code, including but not limited to, Sections 541.060, 541.061, and 542.058. Specifically, Defendants engaged in certain unfair or deceptive acts or practices including, but not limited to the following:

    a.    Failing to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

    b.    Failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim;

    c.    Refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

    d.    Forcing Plaintiff to file suit to recover amounts due under the policy by refusing to pay all benefits due;

    e.    Misrepresenting an insurance policy by failing to disclose any matter required by law to be disclosed, including a failure to make such disclosure in accordance with another provision of this code; and/or

    f.    Failing to pay a valid claim after receiving all reasonably requested and required items from the claimant.

58. Plaintiff was the insured or beneficiary of a claim that was apparently valid, and Plaintiff relied upon Defendants' unfair or deceptive acts or practices to its detriment.

59. As a direct and proximate result of Defendants' acts and conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

60. Since a violation of the Texas Insurance Code is a direct violation of the DTPA, and because Defendants' actions and conduct were committed knowingly and intentionally, Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional damages in an amount not to exceed three times the amount of actual damages.

61. As a result of Defendants' unfair and deceptive actions and conduct, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on their behalf. Accordingly, Plaintiff also seeks to recover their costs and reasonable and necessary attorney's fees as permitted under Section 17.50(d) of the Texas Business &

Commercial Code or Section 541.152 of the Texas Insurance Code and any other such damages to which Plaintiff may show itself to be justly entitled by law and in equity.

### Count V – Breach of Duty of Good Faith and Fair Dealing

62. Plaintiff hereby incorporates by reference all facts and circumstances set forth in the foregoing paragraphs.

63. By its acts, omissions, failures and conduct, Defendants breached its common law duty of good faith and fair dealing by failing to pay the proper amounts on Plaintiff's entire claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for their refusal.

64. Defendants has also breached its duty of good faith and fair dealing owed to Plaintiff by unreasonably delaying payment of Plaintiff's entire claim and by failing to settle Plaintiff's entire claim when Defendants knew or should have known that it was reasonably clear that Plaintiff's claims were covered.

65. It is clear based on Defendants refusal to acknowledge the deficiencies in its investigation that Defendants' investigation was conducted in a manner calculated to construct a pretextual basis for denial.

66. These acts, omissions, failures, and conduct by Defendants are a proximate cause of Plaintiff's damages.

### Count VI – Unfair Insurance Practices

67. Plaintiff hereby incorporates by reference all facts and circumstances set forth in the foregoing paragraphs.

68. Plaintiff has satisfied all conditions precedent to bringing these causes of action. By their acts, omissions, failures, and conduct, Defendants have engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code.

69. Such violations include, without limitation, all the conduct described herein and Defendants' failure to properly investigate Plaintiff's claims. They also include Defendants' unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claims and their failure to pay for the proper repair of the Property, as to which Defendants' liability had become reasonably clear. Defendants further have failed to deny coverage of Plaintiff's claims within a reasonable time. Instead Philadelphia has chosen to pursue a baseless fraud counterclaim against Plaintiff so as not to risk a claim of bad faith denial against it.

70. Additional violations include Defendants' hiring of and reliance upon a biased adjuster and/or engineer to obtain favorable, result-oriented reports to assist them in low-balling and denying Plaintiff's claim. They further include Defendants' failure to look for coverage and give Plaintiff the benefit of the doubt, as well as Defendants' misrepresentations of coverage under the subject insurance policy.

71. Specifically, Defendants are also guilty of the following unfair insurance practices:

   a. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

   b. Engaging in unfair claims settlement practices;

   c. Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue;

   d. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claims as to which Defendants' liability had become reasonably clear;

  e.  Failing to affirm or deny coverage of Plaintiff's claims within a reasonable time and failing within a reasonable time to submit a reservation of rights letter to Plaintiff;

  f.  Refusing to pay Plaintiff's claims without conducting a reasonable investigation with respect to the claims; and/or

  g.  Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

72. Defendants also breached the Texas Insurance Code when they breached their duty of good faith and fair dealing. Defendants' conduct as described herein has resulted in Plaintiff's damages that are described in this First Amended Petition.

### Count VII - Misrepresentation

73. Plaintiff hereby incorporates by reference all facts and circumstances set forth in the foregoing paragraphs.

74. Defendants did not inform Plaintiff of certain exclusions in their policy. Defendants made misrepresentations about the Policy with the intention that they be relied upon and acted upon by Plaintiff, who relied on the misrepresentations to its detriment.

75. Defendant made negligent misrepresentations regarding the Policy and Plaintiff's coverage, which Plaintiff relied upon to its detriment.

76. As a direct and proximate result of Defendants' misrepresentations, Plaintiff suffered damages, including but not limited to loss of their businesses, loss of use of their businesses, mental anguish and attorney fees. Defendants are liable for these actual consequential and penalty-based damages.

### Count VIII – Common-Law Fraud By Misrepresentation

77. Plaintiff hereby incorporates by reference all facts and circumstances set forth in the foregoing paragraphs.

78. Defendants, individually or collectively, perpetrated fraud by misrepresentation (either intentionally or negligently) by falsely representing a fact of materiality to Plaintiff, which relied upon such representations. Such representations ultimately resulted in its injuries and damages. Alternatively, Defendants fraudulently concealed material facts from Plaintiff, the result of which caused damage to Plaintiff that was foreseeable.

79. Specifically, and as a proximate cause and result of this fraudulent concealment, fraud and negligent misrepresentation, all of which was perpetrated without the knowledge or consent of Plaintiff, Plaintiff sustained damages far in excess of the minimum jurisdictional limits of this Court.

80. By reason of Plaintiff's reliance on Defendants' individual and/or collective fraudulent representations, negligent misrepresentations and/or fraudulent concealment of material facts as described in this complaint, Plaintiff suffered actual damages.

81. Because Defendants individually and/or collectively, knew that the misrepresentations made to Plaintiff were false at the time they were made, such misrepresentations are fraudulent, negligent or grossly negligent on the part of Defendants, individually and/or collectively, and constitute conduct for which the law allows the imposition of exemplary damages.

82. Plaintiff has incurred significant litigation expenses, including attorney's fees, in the investigation and prosecution of this action.

83. Accordingly, Plaintiff requests that penalty damages be awarded against Defendants, individually and/or collectively, in a sum in excess of the minimum jurisdictional limits of this Court.

16

## DAMAGES

84. The above described acts, omissions, failures and conduct of Defendants have caused Plaintiff's damages, which include, without limitation, the cost to properly repair Plaintiff's property and any investigative and engineering fees incurred in this claim. Plaintiff is also entitled to recover consequential damages from Defendants' breach of contract. Plaintiff is also entitled to recover the amount of Plaintiff's claim plus an 18% per annum penalty on that claim against Defendant as damages under Section 542 of the Texas Insurance Code, plus prejudgment interest and attorneys fees. Plaintiff seeks monetary relief over $1,000,000.00. Plaintiff also specifically pleads its request for recovery of lost profits.

## ADDITIONAL DAMAGES

85. Defendant has also "knowingly' and "intentionally' committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of Defendant;s knowing and intentional misconduct, Plaintiff is entitled to additional damages as authorized by Section 17.50(b)(1) of the DTPA. Plaintiff is further entitled to the additional damages that are authorized by Section 541 of the Texas Insurance Code.

## ATTORNEY'S FEES

86. As a result of Defendants' conduct that that is described in this First Amended Petition, Plaintiff has been forced to retain the undersigned attorneys and to prosecute this action and has agreed to pay reasonable attorneys fees. Plaintiff is entitled to recover these attorneys fees under Chapter 38 of the Texas Civil Practices and Remedies Code, Sections 541 and 542 of the Texas Insurance Code and Section 17.50 of the DTPA.

## JURY DEMAND

87. Plaintiff asserts he right to trial by jury, under the Seventh Amendment to the United States Constitution, and makes this demand for a jury trial in accordance with the Federal Rules of Civil Procedure.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trail hereof, said Plaintiff has and recovers such sums as would reasonably and justly compensate it in accordance with the rules of law and procedure, both as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on its behalf expended, for prejudgment and post judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

The Bukowski Law Firm, P.C.

_____
Sean Bukowski
Texas Bar No. 24031896
1601 Rio Grande, Suite 300A
Austin, Texas 78701
sbukowski@bukowskilawfirm.com
(512) 614-0335
(832) 201-0822 (fax)

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

This is to certify that on December __, 2016, a true and correct copy of the foregoing document was served electronically on the following parties:

Ramona Martinez
Cobb Martinez Woodward PLLC
1700 Pacific Avenue, Suite 3100
Dallas, TX 75201
rmartinez@cobbmartinez.com

William R. Pilat
Kane Russell Coleman & Logan PC
5051 Westheimer Road, 10th Floor
Houston, TX 77056
wpilat@krcl.com

John P. Palmer
Naman, Howell, Smith & Lee, PLLC
P.O. Box 1470
Waco, Texas 76703
palmer@namanhowell.com

_____
Sean Bukowski

19