UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **SPRING STREET APTS WACO, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. W-16-CA-00315-JCM** |
| **PHILADELPHIA INDEMNITY** | § | |
| **INSURANCE COMPANY and** | § | |
| **CRAWFORD & COMPANY,** | § | |
| **Defendants.** | § | |

## ORDER

Before the Court is Crawford's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 37. The parties have consented to the jurisdiction of the undersigned in accordance with the provisions of 28 U.S.C. § 626(c), Federal Rule of Civil Procedure 73, and the Local Rules of the United States District Court for the Western District of Texas. *See* ECF Nos. 15, 16 and 18.

## I. BACKGROUND

This suit involves an insurance claim for damages to Plaintiff's property. Philadelphia Indemnity Insurance Company ("Philadelphia") issued a Builder's Risk insurance policy to Spring Street Apartments Waco, LLC ("Plaintiff") for Plaintiff's apartment complex known as The Hype Apartments (the "Property"), which includes coverage from May 7, 2013, to May 7, 2014 (the "Policy"). *See* Pl.'s Am. Compl. ¶¶ 7-8, ECF No. 29. On April 15, 2014, Plaintiff submitted a claim to Philadelphia for roof and water damage sustained on at least 25 buildings on the Property. *Id.* ¶¶ 10, 13. Plaintiff claims the damage resulted from severe weather, including damage sustained from winds and strong gusts, which occurred on March 28, 2014, and from a hailstorm that occurred on April 14, 2014. *Id.* ¶¶ 9-10.

In response to Plaintiff's claim, Philadelphia engaged Crawford & Company ("Crawford"), a national claim adjusting firm, to investigate and adjust Plaintiff's reported loss. *Id. ¶* 11. Based on the adjuster's inspection of the Property, Crawford retained engineers to further inspect the Property. *See id.* ¶ 12. The engineers put forth their findings from the inspection in a report referred to as the "Donan Report." *Id.* Plaintiff asserts that the Donan Report contained numerous deficiencies. *Id.* ¶¶ 13-17.[1]

The parties attempted mediation in May 2015, but were unable to resolve their dispute. Counterclaim ¶¶ 119-20. Plaintiff filed suit in state court on June 30, 2016, and Philadelphia removed to this Court for diversity of citizenship pursuant to 28 U.S.C. § 1332(a). ECF No. 1. On January 5, 2017, Crawford filed a Motion to Dismiss Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 37. Plaintiff responded. Crawford replied. For the reasons stated below, the Court construes Crawford's Motion as a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), grants Crawford's Motion, and dismisses all Plaintiff's claims as to Crawford.

## II. TIMELINESS OF CRAWFORD'S MOTION

As an initial matter, Plaintiff asserts in its Response that Crawford's Motion to Dismiss should be denied as untimely. Pl.'s Resp. at 5. Crawford replies that its Motion to Dismiss is not untimely pursuant to Federal Rule of Civil Procedure 12(h)(2), which provides that a motion for "[f]ailure to state a claim upon which relief can be granted" may be raised by a motion under

---

[1] The alleged deficiencies included: the failure to search for reports of severe weather for the dates preceding the date on which Plaintiff reported the damage; misrepresenting conversations that the engineers had with Plaintiff's representative, Mr. John Harvey; the unreasonable use of a limited definition of what constitutes wind damage; inadequately addressed any damage to the interior of the property; and improperly reported that long-term exposure to the elements caused the current condition of the Property's roofs. Pl.'s Am. Compl. ¶¶ 13-17.

Rule 12(c). Def.'s Reply at 1-2 (*citing* Fed. R. Civ. P. 12(h)(2)). The undersigned agrees with Crawford.

The Fifth Circuit addressed this precise issue in *Jones v. Greninger*:

> Initially, we must address the validity of the procedure that the district court followed upon receiving the appellees' 12(b) motion. The district court treated the appellees' motion to dismiss for failure to state a claim, filed after the answer, as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). Because a rule 12(b) motion must be filed before responsive pleadings, the appellees' motion was untimely. Rule 12(c) motions, however, may be filed after the pleadings are closed. Such motions will be treated as a motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted. Thus, the district court did not err when it construed the defendants' motion as one for judgment on the pleadings. *See National Ass'n of Pharmaceutical Mfrs. v. Ayerst Laboratories*, 850 F.2d 904, 909 n. 4 (2d Cir. 1988).

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

Here, Crawford filed its Motion to Dismiss after filing its answer. *See* ECF No. 37. Because 12(b) motions must be filed before responsive pleadings, Crawford's 12(b)(6) motion is untimely. *See Jones*, 188 F.3d at 324. However, because 12(c) motions may be filed after the pleadings are closed, untimely 12(b)(6) motions may be treated as motions for judgment on the pleadings. *Id.* Therefore, the undersigned construes Crawford's Motion as a Motion for Judgment pursuant to Federal Rule of Civil Procedure 12(c).

### III. LEGAL STANDARD

**A. Federal Rule of Civil Procedure 12(c)**

A claim may be dismissed for failure to state a claim upon which relief can be granted upon the filing of a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir.

3

2009). The "inquiry focuses on the allegations in the pleadings and not whether the plaintiff actually has sufficient evidence to succeed on the merits." *Id*.

All well-pleaded facts are viewed in the light most favorable to the plaintiff, but the plaintiff must allege facts that support the elements of the cause of action in order to make a valid claim. *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

As an initial matter, there is no dispute that the "wrongful conduct of an insurance adjuster can give rise to personal liability even if [it] is in a subordinate relationship with the insurance carrier." *Okenkpu v. Allstate Texas Lloyd's*, No. CIV.A. H-11-2376, 2012 WL 1038678, at *7 (S.D. Tex. Mar. 27, 2012) (citing *Gasch v. Hartford Accident and Indemnity Co.*, 491 F.3d 278, 282–83 (5th Cir. 2007) (holding that Texas law "clearly authorizes Article 21.21 [541.060] actions against insurance adjusters in their individual capacities."). Rather, the issue before the Court is whether Plaintiff's Amended Complaint sufficiently pleads a reasonable factual basis for recovery against Crawford. In order to sufficiently plead a cause of action against an insurance adjuster, a plaintiff must allege "specific actionable conduct by the adjuster and distinguish claims against the adjuster from generic, conclusory, statute-tracking claims against the insurer." *Mt. Olive Missionary Baptist Church v. Underwriters at Lloyd's, London*,

No. CV H-16-234, 2016 WL 4494439, at *3 (S.D. Tex. Aug. 26, 2016) (*citing Okenkpu*, 2012 WL 1038678, at *7 (collecting cases)).

**B. Federal Rule of Civil Procedure 9(b)**

The Federal Rules of Civil Procedure dictate that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) "prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009). The goals of Rule 9(b) are to "provide[ ] defendants with fair notice of the plaintiffs' claims, protect[ ] defendants from harm to their reputation and goodwill, reduce[ ] the number of strike suits, and prevent[ ] plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Grubbs*, 565 F.3d at 190 (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)).

A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002); *see Williams v. WMX Tech. Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *see also United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States, ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (Rule 9(b)'s particularity requirement generally means, "at a minimum . . . that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.").

Furthermore, "claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co.*

*of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998); *see Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2010 WL 3422873, at *14 (N.D. Tex. Aug. 26, 2010) ("[W]hen the parties have not urged a separate focus on the negligent misrepresentation claims, the Fifth Circuit has found negligent misrepresentation claims subject to Rule 9(b) in the same manner as fraud claims.") (internal quotations and citations omitted).

Additionally, courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on "simple, concise, and direct" allegations. *Williams*, 112 F.3d at 178. However, this requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186. Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6). *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

## IV. DISCUSSION

Crawford moves to dismiss Plaintiff's claims of: (1) negligence; (2) breach of contract; (3) breach of good faith and fair dealing; (4) Deceptive Trade Practices Act ("DTPA") violations; (5) Texas Insurance Code ("TIC") and unfair insurance practices; and (6) common law negligent misrepresentation and fraud. *See* Def.'s Mot. Dismiss at 4-6, 13. Plaintiff does not contest and voluntarily agrees to dismiss its claims of: (1) negligence; (2) breach of contract; and (3) breach of good faith and fair dealing against Crawford. Pl.'s Resp. at 6 n. 2. Therefore, the Court will focus on the remaining claims in Crawford's Motion.

## A. Deceptive Trade Practices Act

Plaintiff alleges that Crawford violated numerous DTPA provisions; specifically, §§ 17.46(b)(5); 17.46(b)(7); 17.46(b)(12); 17.46(b)(14); 17.46(b)(20); 17.46(b)(24); 17.50(a)(3); and 17.50(a)(4) of the Texas Business and Commerce Code. Pl.'s Am. Compl. ¶ 44. Crawford argues that Plaintiff's DTPA claims: (1) fail to state a claim pursuant to Rule 12(b)(6); (2) fail to meet the specificity requirement of rule 9(b); and (3) fail to allege detrimental reliance. *See generally* Def.'s Mot. Dismiss.

### 1. Federal Rule of Civil Procedure 12(b)(6)

Crawford asserts that Plaintiff's allegations: (1) fail to allege specific actionable conduct by the adjuster; (2) fail to provide an explanation of how Crawford's alleged conduct violated the DTPA or damaged Plaintiff; and (3) are nothing more than a mere formulaic recitation of DTPA provisions. Def.'s Mot. Dismiss at 6. The undersigned agrees.

### a. specific actionable conduct

In order to sufficiently plead a cause of action against an insurance adjuster, a plaintiff must allege "specific actionable conduct by the adjuster and to distinguish claims against the adjuster from generic, conclusory, statute-tracking claims against the insurer." *Mt. Olive*, 2016 WL 4494439, at *3 (internal citations omitted). Here, Plaintiff's factual allegations are not pleaded with enough specificity to distinguish particular facts from legal conclusions. For example:

Plaintiff alleges:

> it is entitled to recover under DTPA Sections 17.46(b)(12) and (20), as well as 17.50(a)(2) because Defendants breached an express warranty that damage caused by a severe wind event would be covered under the subject insurance policies.

However, this allegation merely states a conclusion that the Policy expressly covered wind damage.

To be actionable, Defendant's failure to disclose must have been "intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." *See* DTPA § 17.46(b)(24) (Vernon Supp. 2001), cited in *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 901 (W.D. Tex. 2001). Plaintiff alleges:

> Defendants' collective actions constitute violations of the Deceptive Trade Practices Act ("DTPA"), including but not limited to Sections 17.46(b)(12), 17.46(b)(14), 17.46(b)(20), 17.46(b)(24), and Section and 17.50(a)(4) of the Texas Business and Commerce Code.

Pl.'s Am. Compl. ¶ 44. Noticeably absent from Plaintiff's Amended Complaint is any specific discussion of the information Crawford failed to disclose. Not only did Plaintiff fail to specifically describe the information, Plaintiff failed to allege what it would have done had Defendant disclosed that information.

Concerning Section 17.50(a)(3), Plaintiff alleges:

> Defendants' actions, as described herein, were unconscionable in that they took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.

Pl.'s Am. Compl. ¶ 50. However, Plaintiff's allegations merely state a conclusion without identifying any specific acts by Crawford that took advantage of Plaintiff's knowledge, ability, or experience to an unfair degree.

In addition, Plaintiff's allegations merely track the statutory language of sections 17.46(b)(5) and 17.46(b)(7) of the DTPA without alleging any case specific facts. Section 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person  does not." Tex. Bus. & Com. Code Ann. § 17.46(b)(5) (West). Here, Plaintiff alleges that Defendants represented to Plaintiff that the Policy and Defendants' adjusting and investigat[ing] services had characteristics or benefits that they actually did not have, which entitles Plaintiff to recover under DTPA Section 17.46(b)(5). Pl.'s Am. Compl. ¶ 46.

Section 17.46(b)(7) prohibits "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Tex. Bus. & Com. Code Ann. § 17.46(b)(7) (West). Here, Plaintiff alleges that it is entitled to recover under DTPA Section 17.46(b)(7) because Defendants represented to Plaintiff that the Policy and Defendants' adjusting and investigat[ing] services were of a particular standard, quality, or grade when they were of another. Pl.'s Am. Compl. ¶ 47.

Noticeably absent from Plaintiff's Amended Complaint is any specific description of conduct that Crawford allegedly engaged in. Specifically, Plaintiff's Amended Complaint is void of allegations as to specific miscalculations Crawford's agent made in his/her report, or what specific damages were not covered and why. The specific allegations mirror those against Philadelphia. Thus, the allegations specified against Crawford are insufficient for Plaintiff to state a cause of action.

In sum, Plaintiff's sweeping allegations as to all "Defendants" fail to allege and distinguish specific conduct against Crawford, the insurance adjuster, from the insurer.[2] Because Plaintiff fails to allege specific actionable conduct by the adjuster, distinguishable from the claims against the insurer, it fails to state a claim upon which relief can be granted.

### b. proximate cause and damages

Furthermore, Plaintiff fails to provide an explanation of *how* Crawford's alleged conduct violated the DTPA or *caused* Plaintiff damage. In order to state a valid claim under the DTPA, Plaintiff must show that: (1) it is a consumer under the DTPA with respect to its claim against Crawford; (2) Crawford committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA,[3] breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) these acts were the producing cause of Plaintiff's actual damages. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) (citing *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 513 (Tex. 1998)). Here, Plaintiff's Amended Complaint provides:

> [a]s a direct and proximate cause of *Defendants'* collective acts and conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiff now sues . . . . All of the above-

---

[2] Another example of Plaintiff's broad allegations as to all Defendants is paragraph 48 of Plaintiff's Amended Complaint:

> [Plaintiff is] entitled to recover under DTPA Sections 17.46(b)(5), 17.46(b)(7), and 17.46(b)(12) due to *Defendants* representation that it would pay the entire amount Plaintiff needed to repair the damages caused by a severe wind event and then failed to do so. Pl.'s Am. Compl. ¶ 48 (emphasis added).

Pl.'s Am. Compl. § 48.

[3] Section 17.46(b) of the DTPA makes false, misleading, or deceptive acts or practices in the conduct of any trade or commerce unlawful. *McPeters v. LexisNexis*, 910 F. Supp. 2d 981, 987–88 (S.D. Tex. 2012), *on reconsideration*, 11 F. Supp. 3d 789 (S.D. Tex. 2014).

> described acts, omissions, and failures of *Defendants* are a
> direct and proximate cause of Plaintiff's damages.

Pl.'s Am. Compl. ¶¶ 52-53 (emphasis added).

Plaintiff's formulaic recitation of the statutory language and failure to distinguish particular facts from legal conclusions is insufficient to fulfill its obligations to provide grounds on which it is entitled to relief. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *see also Papasan v. Allen*, 478 U.S. 265, 286 (1986) ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"). Thus, Plaintiff fails to allege any specific conduct to state a claim for DTPA violations against Crawford that is plausible on its face. Def.'s Mot. Dismiss at 7.

### 2. Federal Rule of Civil Procedure 9(b).

Even if Plaintiff pleaded sufficient facts to meet the pleading standard set forth in *Iqbal* and *Twombly*, Plaintiff's DTPA claims fail to meet the pleading standards required by Rule 9(b) of the Federal Rules of Civil Procedure. Claims made under the DTPA for misrepresentation are subject to the heightened pleading requirements of Rule 9(b). *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *see also Frith*, 9 F. Supp. 2d at 742 ("Claims alleging violations of the Texas Insurance code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)."). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby."

*Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 U.S. Dist. LEXIS 91173, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011).

Crawford argues that Plaintiff's DTPA allegations against it fail to identify: (1) the content of any alleged misrepresentation by Crawford; (2) the time and place of any alleged misrepresentation; (3) who made the misrepresentation: (4) to whom the misrepresentation was made; and (5) what the maker of the misrepresentation allegedly obtained thereby. Def.'s Mot. Dismiss at 8. In response, Plaintiff points to paragraphs 11, 12, 29, 30, and 32 of its Amended Complaint to support its contention that its pleading sufficiently meets Rule 9(b)'s context-specific standard. Pl.'s Resp. at 7-8. Specifically, Plaintiff alleges in paragraph 11 that Crawford was assigned to adjust Plaintiff's claim and did adjust it by investigating, processing, evaluating, approving and/or denying, in whole or in part, the claim. *Id.* (*citing* Pl.'s Am. Compl. ¶ 11). Plaintiff also points to paragraphs 12, 29, 30, and 32 of its Amended Complaint. Pl.'s Resp. at 7-8. Plaintiff alleges that Crawford, while adjusting, improperly evaluated the extensive losses, completed a substandard inspection of the property, retained an inadequate engineer, failed to conduct a fair investigation, failed to properly request information, failed to respond to requests for information, failed to timely evaluate and estimate Plaintiff's claim, and failed to timely and properly report and make recommendations to Philadelphia regarding the claim. *Id.* (*citing* Pl.'s Am. Compl. ¶¶ 12, 29, 30, 32). Plaintiff further contends:

- The facts are sufficient to give Crawford notice of the time (the period of its investigation), place (at the property where it inspected), and content (its failures and improprieties listed above) of its DTPA violations.

- Plaintiff also has put Crawford on notice of its objections to Crawford's inadequacies as early as 2014.

- Plaintiff is not required to allege each and every specific deficiency with Crawford's investigation.

- It simply needs to allege specific facts to put Crawford on notice, which it has done.

Pl.'s Resp. at 8.

Contrary to Plaintiff's assertion, Plaintiff is required to allege specific facts that go beyond a mere notice pleading. Plaintiff fails to state the name of the agent, or contents of the agent's purported fraudulent statements and misrepresentation as required by Rule 9(b). Although Plaintiff generically describes Crawford's fraudulent acts, Plaintiff fails to discuss the conduct and/or statements of the unidentified Crawford agent who purportedly improperly evaluated, made a substandard inspection, retained an inadequate engineer, failed to conduct a fair investigation, failed to properly request information, failed to respond to requests for information, failed to timely evaluate and estimate Plaintiff's claim, and failed to timely and properly report and make recommendations to the insurer. (*citing* Pl.'s Am. Compl. ¶¶ 12, 29, 30, and 32). Rather, except for the retention of an inadequate engineer, Plaintiff's Amended Complaint reads as though the engineer Crawford allegedly hired committed the above acts. Because Plaintiff failed to plead the particulars of the time, place, and contents of the false representations, or even the identity of the person making the representation and what he or she obtained thereby, Plaintiff's DTPA claims do not meet the pleading requirements set forth in Rule 9(b).

**B. Texas Insurance Code and Unfair Insurance Practices**

Crawford also moves to dismiss Plaintiff's claims for Texas Insurance Code violations (Count IV) and unfair insurance practices (Count VI), contending that Plaintiff's Amended Complaint fails to allege facts specific as to Crawford.[4] Def.'s Mot. Dismiss at 8. Specifically, Crawford asserts that Plaintiff globally alleges "Defendants' actions constitute violations of the Texas Insurance Code, including but not limited to, Sections 541.060, 541.061, and 542.058." *Id.* Plaintiff responds that it has alleged a valid cause of action against Crawford and "has plead more than enough facts to put Crawford on notice of its Texas Insurance code allegations." Pl's Resp. at 10.

First, Plaintiff extensively briefs the issue regarding whether adjusters can be held liable under Chapter 541. *Id.* at 10-13. It is well settled that an adjuster may be found liable in his individual capacity for deceptive or misleading acts in violation *inter alia* of the Texas Insurance Code. *See Garrison Contractors,* 966 S.W.2d at 486; *see also Griggs v. State Farm Lloyds,* 181 F.3d 694, 701 (5th Cir. 1999). However, to be held liable, the adjusting company must have committed some act that is prohibited by the Texas Insurance Code, not just be connected to an insurance company's denial of coverage. *See McClelland v. Chubb Lloyd's Ins. Co.*, 2016 U.S. Dist. LEXIS 136087, at*5 (W.D. Tex. Sep. 30, 2016) (citing *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014)). Thus, the sole issue before this Court is whether Crawford has shown that there is no reasonable basis to predict that state law would allow recovery against Crawford. Put another way, Crawford must show that Plaintiff failed to

---

[4] Plaintiff's allegations as to unfair insurance practices are premised on the alleged violations of Texas Insurance Code Chapter 541. Pl.'s Am. Compl. ¶ 68. Thus, as Crawford points out, the analysis for both counts are the same. Def.'s Mot. Dismiss at 9. Therefore, the undersigned will analyze Plaintiff's Texas Insurance Code Chapter 541 and unfair insurance practices claims together.

assert factual allegations against Crawford sufficient to form an independent cause of action from those alleged against Philadelphia.

Plaintiff argues that Texas courts have held that allegations similar to those before the Court were sufficient to state a claim under the Texas Insurance Code for misrepresenting the policy. Pl.'s Resp. at 13. Plaintiff relies upon three district court cases concerning motions to remand for improper joinder. *See id.* at 13-15. However, the courts in all three cases applied the Texas "fair notice" standard rather than the "more stringent" federal pleading standard when determining whether the plaintiff stated a claim for relief against the claims adjuster. *See Esteban v. State Farm Lloyds*, 23 F. Supp. 3d 723, 732 (N.D. Tex. 2014) ("[t]hus, this Court will apply the Texas pleading standard to determine whether Esteban has stated a claim for relief against Galvan."); *see also Campos v. American Bankers Ins. Co. of Florida*, No. H-10-0594, 2010 WL 2640139 (S.D. Tex. June 30, 2010) (noting "the fact that the pleadings do little more than recite the elements of the statutory claims might be viewed as pleading insufficiency in federal court and might be the basis for an order granting leave to amend. But this court cannot conclude that there is no reasonable basis to predict that Campos might recover against Castilleja in state court."); *Harris v. Allstate Tex. Lloyd's*, No. H–10–0753, 2010 WL 1790744 (S.D. Tex. Apr. 30, 2010) ("[t]o establish that a nondiverse defendant has been improperly joined for the purpose of defeating diversity jurisdiction the removing party must prove either that there has been actual fraud in the pleading of jurisdictional facts or that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against that party in *state* court.") (emphasis added) (internal citations omitted). Thus, the Court finds Plaintiff's reliance on *Esteban*, *Campos*, and *Harris* unpersuasive.

The present case is similar to *Hutchins Warehouse Ltd. Partners v. Am. Auto. Ins. Co., et. al.*, and *Sanchez v. Allied Prop. & Cas. Ins. Co.* In *Hutchins*, the plaintiff pleaded the following:

1. [McMillan] . . . made numerous errors in estimating the value of plaintiff's claim;

2. "McMillan did not conduct a thorough investigation of plaintiff's claim . . . . [His] substandard inception failed to include all of Plaintiffs strum damages noted upon inspection";

3. "The Damages included in the estimate were grossly undervalued";

4. "defendant McMillan failed to thoroughly review and properly supervise the inspection of The Property";

5. "Further, defendant McMillan knowingly and intentionally overlooked damages at The Property and used their own inadequate and biased investigation as the basis for erroneously denying a portion of plaintiff's claim."

*Hutchins Warehouse Ltd. Partners v. Am. Auto. Ins. Co., et. al.*, No. 3:16-cv-3336-G, 2017 WL 588657 *4 (N.D. Tex. Feb 14, 2017) (Fish, J.). The court found that the allegations fell short of describing the loss, "such as how McMillan specifically committed any of the above acts." *Id.* Thus, the court held that the lack of factual support was "nothing more than legal conclusions couched as factual allegations which the court need not consider in determining a motion to dismiss." *Id.* (quoting *Weldon*, 2009 WL 1437837, at *4).

Here, Plaintiff's Amended Complaint, in relevant part, provides:

1. Defendants engaged in certain unfair or deceptive acts or practices including, but not limited to the following:

   a. Failing to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

   b. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in

16

relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim;

c.  Refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

d.  Forcing Plaintiff to file suit to recover amounts due under the policy by refusing to pay all benefits due;

e.  Misrepresenting an insurance policy by failing to disclose any matter required by law to be disclosed, including a failure to make such disclosure in accordance with another provision of this code; and/or

f.  Failing to pay a valid claim after receiving all reasonably requested and required items from the claimant.

2.  Crawford adjusted Plaintiff's claim by investigating, processing, evaluating, approving, and or denying, in whole or in part, plaintiff's claim

3.  Crawford . . . conducted a substandard inspection of Plaintiff's property.

4.  Crawford failed to properly inspect the Property and their related damages, failed to properly request information, failed to properly investigate the claims, failed to respond to requests for information from Plaintiff, failed to timely evaluate the claims, failed to timely estimate the claims, and failed to timely and properly report to Philadelphia and make recommendations to it with regard to Plaintiff's claims.

5.  Crawford failed to properly adjust the claims and the losses.

6.  Defendants have further failed to affirm or deny coverage within a reasonable time.

7.  As a result of the above issues, Plaintiff did not receive the coverage for which it had originally contracted with Philadelphia.  Unfortunately, Plaintiff has therefore been forced to file this suit in order to recover damages arising from the above conduct, as well as from the unfair refusal to pay insurance benefits.

Pl.'s Am. Compl. ¶¶ 11, 12, 29, 30, 32, and 35.

Similar to the allegations in *Hutchins*, Plaintiff's allegations fall short of describing the cause of the loss, such as how Crawford specifically committed any of the above acts. The closest Plaintiff comes to making factual allegations is its statement that Crawford through its substandard inspection "[hired] an inadequate engineer." Pl.'s Resp. at 11. However, this allegation, like the unsuccessful allegation in *Hutchins* that "[McMillan's] June 7, 2016 report . . . failed to include all of the plaintiffs' storm damages noted upon inspection," lacks factual support.

Moreover, Plaintiff's allegations against Crawford merely track the statutory language under which Plaintiff purports to bring its claims against Crawford. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Nor does a complaint comply with the standard if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. Evaluating the plausibility of a claim is a context specific process that requires a court to draw on its experience and common sense. *Iqbal*, 556 U.S. at 663–64.

In *Sanchez v. Allied Property*, Sanchez alleged that the insurance company, Allied, and the insurance adjuster, Williams, violated 541.060(a)(7) by " 'fail[ing] to properly investigate Plaintiff's claim and fail[ing] to attempt in good faith to settle the claims once Defendant Allied's liability became reasonably clear.'" *Sanchez v. Allied Prop. & Cas. Ins. Co.*, No. 1:16-CV-176-LY, 2016 WL 1669989, at *2 (W.D. Tex. Apr. 18, 2016). The court held that Sanchez "failed to plead any facts relating to Williams' conduct that rose above the level of conclusory allegations." *Id.* Specifically, the court noted that Sanchez pleaded "no more than a recitation of provisions of the Texas Insurance Code." *Id.* Therefore, "the complaint [did] not include any specific factual

content that allow[ed] the court to draw the reasonable inference that Williams was liable for the misconduct alleged." *Id.* Thus, the court found that Sanchez failed to state a claim for relief under the Texas Insurance Code. *Id.*

Here, like in *Sanchez*, Plaintiff's allegations merely track the statutory language of sections 541.060, 541.061, and 542.058 of the TIC without alleging any case specific facts.

> Section 541.060(a)(2) prohibits:
>
> > failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.

Tex. Ins. Code Ann. § 541.060(a)(2) (West). Plaintiff alleges:

> Defendants fail[ed] to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.

Pl.'s Am. Compl. at ¶ 57. Section 541.060(a)(3) prohibits:

> failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim.

Tex. Ins. Code Ann. § 541.060(a)(3) (West). Plaintiff alleges:

> Defendants fail[ed] to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim.

Pl.'s Am. Compl. at ¶ 57. Section 541.060(a)(7) prohibits:

> refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

Tex. Ins. Code Ann. § 541.060(a)(7) (West). Plaintiff alleges:

> Defendants refus[ed] to pay a claim without conducting a reasonable investigation with respect to the claim.

Pl.'s Am. Compl. at ¶ 57.Section 541.061(f) prohibits:

> failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

Tex. Ins. Code Ann. § 541.061(5) (West). Plaintiff alleges:

> Defendants misrepresent[ed] an insurance policy by failing to disclose any matter required by law to be disclosed, including a failure to make such disclosure in accordance with another provision of this code.

Pl.'s Am. Compl. at ¶ 57. Section 542.058 prohibits:

> an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, [from] delay[ing] payment of the claim . . . .

Tex. Ins. Code Ann. § 542.058 (West). Plaintiff alleges:

> Defendants fail[ed] to pay a valid claim after receiving all reasonably requested and required items from the claimant.

Pl.'s Am. Compl. at ¶ 57.

Plaintiff makes indiscriminate allegations against "Defendants." When Plaintiff does make allegations against Crawford specifically, Plaintiff fails to plead with enough specificity to distinguish facts from legal conclusions. Plaintiff's purported factual allegations are "nothing more than legal conclusions couched as factual allegations, which the court need not consider in determining a motion to dismiss." *See Weldon Contractors, Ltd. v. Fireman's Fund Insurance Company*, No. 4:09-CV-0165-A, 2009 WL 1437837, at *4 (N.D. Tex. May 22, 2009) (McBryde, J.).

Moreover, Plaintiff's formulaic recitation of the statutory language and failure to distinguish particular facts from legal conclusions is insufficient to fulfill its obligations to provide grounds on which it is entitled to relief. *See Twombly*, 550 U.S. at 555. Furthermore,

merely parroting the statutory language, without attempting to connect specific conduct of the defendant to the refusal to pay a claim, "is simply a recitation of the statutory language, and thus is conclusory and fails to state a claim." *See DTND Sierra Invs., LLC v. Bank of Am., N.A.*, 871 F. Supp. 2d 567, 580 (W.D. Tex. 2012).

**C. Misrepresentation and Fraud**

Plaintiff also brings common law negligent misrepresentation and fraud claims against Crawford. Under Texas law, a claimant alleging negligent misrepresentation must show the following:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.

*Ellis v. Bank of N.Y. Mellon Trust Co.*, No. 4:11-CV-049, 2012 WL 359673, at *3 (E.D. Tex. Feb. 2, 2012) (*citing Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). Under Texas law, a plaintiff can demonstrate common law fraud when:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury.

*Shakeri*, 816 F.3d at 296 n. 5 (citing *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990). Crawford moves to dismiss Plaintiff's claims of negligent misrepresentation and fraud, alleging that these claims: (1) consist of "vague, general conclusions without any factual

21

support as to Crawford"; and (2) fail to comply with the specificity requirements of Federal Rule of Civil Procedure 9(b); and (3) Plaintiff alleges other facts that negate Plaintiff's alleged reliance. The undersigned will discuss each in turn.

### 1. Federal Rule of Civil Procedure 12(b)(6)

Crawford moves to dismiss Plaintiff's claims of negligent misrepresentation and fraud, alleging that these claims consist of "vague, general conclusions without any factual support as to Crawford." Def.'s Mot. Dismiss at 13 (*citing* Pl.'s Am. Compl. at ¶¶ 74-83). Crawford further contends that Plaintiff's Amended Complaint fails to identify any specific misrepresentation that Crawford allegedly made to Plaintiff and; therefore, Plaintiff's Amended Complaint is void of allegations regarding *how* Plaintiff relied on any such alleged misrepresentation or how any misrepresentation damaged Plaintiff. Def.'s Mot. Dismiss at 13.

Plaintiff rebuts by pointing to paragraphs 12, 26, 29, 30, 33, and 35 of its Amended Complaint, arguing that these paragraphs sufficiently allege that Plaintiff relied on Crawford to assist its repair process by conducting a fair investigation and bringing about a proper settlement, as well as showing that Crawford conducted an improper, substandard and biased investigation, inspection and evaluation of the Property to Plaintiff's detriment. Pl.'s Resp. at 15 (*citing* Pl.'s Am. Compl. ¶¶ 12, 26, 29, 30, 33, and 35).

This case is similar to *Young v. Travelers Pers. Sec. Ins. Co.*, No. 4:16-CV-235, 2016 WL 4208566, at *3–5 (S.D. Tex. Aug. 10, 2016).[5] In *Young*, the plaintiff pleaded the following:

- Defendant Finley made numerous errors in estimating the value of Plaintiff's claim, all of which were designed to intentionally minimize and underpay the loss incurred by

---

[5] Though the question in *Young* was whether the claims adjuster was improperly joined, the court applied the same 12(b)(6) analyses as the undersigned does in this case to determine if the allegations in the complaint were factually sufficient to support a cause of action against the claims adjuster. *See Young*, 2016 WL 4208566, at *3–5.

the Plaintiff . . . As a result of Defendant Finley's conduct,
Plaintiff's claim was underpaid.

- Defendant Finley's conduct constitutes multiple violations
  of the Texas Insurance Code, Unfair Settlement Practices . .
  . .

- Defendant Finley is individually liable for his unfair and
  deceptive acts, irrespective of the fact he was acting on
  behalf of Defendant Travelers . . . .

- Defendants knowingly or recklessly made false
  representations, as described above, as to material facts
  and/or knowingly concealed material information from
  Plaintiff.

*Id.* at *3-4. The court found that these statements were "conclusory and lack[ed] the specificity

necessary to state a claim. The statements [were] nothing more than a formulaic recital of the

statutory elements." *Id.* at 4.

The allegations in *Young* are very similar to those pleaded in this case. Here, the relevant

portions of Plaintiff's Amended Complaint provides:

> 12. Crawford, through its agents, conducted a substandard
> inspection of Plaintiff's property. The inadequacy of
> Crawford's inspection can be seen in many areas, including
> the report done by the engineers hired by Crawford (the
> "Donan Report").

> 26. In the aftermath of the severe weather event, Plaintiff
> relied on Philadelphia and Crawford and its adjusters to
> help begin the slow and painful repair process. By and
> through the Policy with Philadelphia, Plaintiff was
> objectively insured for the subject losses in this matter.

> 29. In the months following the filing of its claim, Plaintiff
> provided information to Philadelphia and Crawford, and
> gave Philadelphia and Crawford opportunities to inspect
> the Property. Crawford, however, failed to conduct a fair
> investigation into the damage to the Property. Crawford
> failed to properly inspect the Property and their related
> damages, failed to properly request information, failed to
> properly investigate the claims, failed to respond to

requests for information from Plaintiff, failed to timely evaluate the claims, failed to timely estimate the claims, and failed to timely and properly report to Philadelphia and make recommendations to it with regard to Plaintiff's claims.

30. Despite the Defendants' improprieties, Plaintiff continued to provide information regarding the losses and the related claims to Crawford and Philadelphia. Further, Plaintiff made inquiries regarding the status of the losses, and payments. Regardless, Crawford failed to properly adjust the claims and the losses. As a result, to this date, Plaintiff has not received proper payment for the claims, even though notification was provided shortly after the loss.

33. Philadelphia has, to date, refused to fully compensate Plaintiff under the terms of the Policy that Plaintiff paid for, even though it was Philadelphia that failed to conduct a reasonable investigation. Despite Plaintiff pointing out deficiencies in Defendants' investigation, Defendants continue to rely solely on their own unreasonable investigation. Ultimately, Defendants performed a result-oriented investigation of Plaintiff's claims that resulted in an unfair, biased and inequitable evaluation of Plaintiff's losses.

35. As a result of the above issues, Plaintiff did not receive the coverage for which it had originally contracted with Philadelphia. Unfortunately, Plaintiff has therefore been forced to file this suit in order to recover damages arising from the above conduct, as well as from the unfair refusal to pay insurance benefits. As indicated below, Plaintiff seeks relief under the common law, the Deceptive Trade Practices-Consumer Protection Act and the Texas Insurance Code.

74. Defendants did not inform Plaintiff of certain exclusions in their policy. Defendants made misrepresentations about the Policy with the intention that they be relied upon and acted upon by Plaintiff, who relied on the misrepresentations to its detriment.

75. Defendant made negligent misrepresentations regarding the Policy and Plaintiff's coverage, which Plaintiff relied upon to its detriment.

76. As a direct and proximate result of Defendants' misrepresentations, Plaintiff suffered damages, including but not limited to loss of their businesses, loss of use of their businesses, mental anguish and attorney fees. Defendants are liable for these actual consequential and penalty-based damages.

78. Defendants, individually or collectively, perpetrated fraud by misrepresentation (either intentionally or negligently) by falsely representing a fact of materiality to Plaintiff, which relied upon such representations. Such representations ultimately resulted in its injuries and damages. Alternatively, Defendants fraudulently concealed material facts from Plaintiff, the result of which caused damage to Plaintiff that was foreseeable.

79. Specifically, and as a proximate cause and result of this fraudulent concealment, fraud and negligent misrepresentation, all of which was perpetrated without the knowledge or consent of Plaintiff, Plaintiff sustained damages far in excess of the minimum jurisdictional limits of this Court.

80. By reason of Plaintiff's reliance on Defendants' individual and/or collective fraudulent representations, negligent misrepresentations and/or fraudulent concealment of material facts as described in this complaint, Plaintiff suffered actual damages.

81. Because Defendants individually and/or collectively, knew that the misrepresentations made to Plaintiff were false at the time they were made, such misrepresentations are fraudulent, negligent or grossly negligent on the part of Defendants, individually and/or collectively, and constitute conduct for which the law allows the imposition of exemplary damages.

Pl.'s Am. Compl. ¶¶ 12, 26, 29, 30, 33, 35. 74-76, and 78-81.

Like *Young*, these allegations do not sufficiently describe the actionable conduct of an

adjuster. For instance, though Plaintiff alleges that "Defendants did not inform Plaintiff of

certain exclusions in their policy and Plaintiff's coverage," Plaintiff fails to allege what *specific*

misrepresentations Crawford made. Plaintiff's allegations amount to nothing more than the

unadorned "defendant unlawfully harmed me" accusation. *Iqbal*, 556 U.S. at 678 (*citing*

*Twombly*, 550 U.S. at 555).

      *Martines v. State Farm Lloyd* and *Manziel v. Seneca Ins. Co., Inc*, are examples of cases

where courts found that the plaintiff pleaded enough facts against an insurance adjuster to state

an independent cause of action. *Martinez v. State Farm Lloyd's*, No. 3:16-CV-00040-M, 2016

WL 4427489 at *1 (N.D. Tex. Aug. 22, 2016); *Manziel v. Seneca Ins. Co., Inc.*, 3:15-CV-03786-

M, 2016 WL 3745686 at *1 (N.D. Tex. July 13, 2016). In *Martinez*, the insured, Martinez ("the

plaintiff"), filed suit in state court against the insurer, State Farm ("the insurer"), and the

adjuster, Williams ("the adjuster"), alleging that they improperly denied his claim. *Martinez*,

2016 WL 4427489 at *1. The court held that the allegations in the plaintiff's complaint met the

*Twombly* pleading standard. *Id.* at *3. The court noted that the petition contained specific

descriptions of how the adjuster's inspection was inadequate. *Id.* The court further noted that the

petition explicitly alleged that the inspection only took 20 minutes, it undervalued the cost of

repairs, it omitted some of the plaintiff's damages, and finally the petition alleged how the

adjuster applied depreciation in excess without explanation. *Id.* The court reasoned that this

specificity created a reasonable basis in which the plaintiff may recover from the adjuster. *Id.*

      In *Manziel*, the insured, Manziel and Oil Place Inc. ("the plaintiffs"), had property

insured by Seneca ("the insurer"). *Manziel*, 2016 WL 3745686 at *1. After the property

sustained wind and hail damage, the insurer assigned a third-party adjuster to the claim who in

turn assigned Keefer, a resident of Texas, to adjust the claim. *Id.* After receiving no payment, the

plaintiffs sued the insurer, the third-party adjusting company, and the adjuster, Keefer. *Id.* The

court found that the petition alleged facts against Keefer that were independent of those asserted

against the other defendants. *Id.* at *3 Specifically, the court noted that the plaintiffs alleged that Keefer represented that there was no damage to the property, that Keefer hired an inadequate engineer to assess the damage to the property, that Keefer refused to send a report to the plaintiffs, and that Keefer failed to respond to emails or provide updates to the plaintiffs. *Id.* Given the specificity in the petition, the court held that there was a reasonable basis to predict that the plaintiffs may recover from Keefer. *Id.*

Unlike *Martinez* and *Manziel*, the statements in Plaintiff's Amended Complaint are conclusory and lack the specificity needed to state a claim. The statements are nothing more than a formulaic recital of the statutory elements. With regard to the common law fraud claim, Plaintiff merely points to the same conclusory allegations by referring to the same actions "as described above." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 556 U.S. at 668. Thus, concerning its claims of fraud and negligent misrepresentation, Plaintiff fails to plead "enough facts to state a claim that is plausible on its face." *See Twombly*, 550 U.S. at 570.

### 2. Fed. R. Civ. P. 9(b)

Even if Plaintiff's Amended Complaint met the 12(b)(6) standard, it fails to meet the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See Grubbs*, 565 F.3d at 186 ("Rule 9(b) supplements, but does not supplant Rule 8(a)'s notice pleading"). Crawford argues that Plaintiff's negligent misrepresentation and fraud claims also fail to comply with the specificity requirements of Federal Rule of Civil Procedure 9(b), which requires, at a minimum, identification of the "who, what, when, where, and how" of the alleged fraud. Def.'s Mot. Dismiss at 13. (citing *Together 6, LLC*, 2015 U.S. Dist. LEXIS 118700, at *11). Plaintiff contends that it sufficiently pleaded the particulars of the time, place and content of the

circumstances constituting fraud, as required by Rule 9(b). Pl.'s Resp. at 15. The following is a summary of Plaintiff's arguments in support of its contention:

- Paragraph 26: Plaintiff alleges that it relied on Crawford to assist it in the repair process.

- Paragraphs 12, 29, 30, 33: Crawford completed a substandard and biased investigation of the damage to Plaintiff's property during the claims handling process.

- Paragraph 11: Specifically, Plaintiff alleges that Crawford was assigned to adjust Plaintiff's claim and did adjust it by investigating, processing, evaluating, approving and/or denying, in whole or in part, the claim. *Id*. at ¶ 11.

- Paragraphs 12, 29, 30, 32: Plaintiff further alleges that Crawford improperly evaluated the extensive losses, completed a substandard inspection of the property, retained an inadequate engineer, failed to conduct a fair investigation, failed to properly request information, failed to respond to requests for information, failed to timely evaluate and estimate Plaintiff's claim and failed to timely and properly report and make recommendations to Philadelphia regarding the claim.

- Paragraphs 35, 55, 61, 76, 82: Due to these misrepresentations, Plaintiff's settlement has been delayed, it has not receive the coverage it had contract for, and had to retain claims consultants, engineers and an attorney to protect and pursue the claim, and has suffered damages including, but not limited to loss of business, loss of use of business, mental anguish, attorney's fees.

Pl.'s Resp. at 15-16.

When claims of fraud are dismissed as insufficiently pleaded, any statutory claims depending on the same facts must also be dismissed *Cf. Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d  363, 368–69 (5th Cir. 2001) (suggesting that statutory claim containing fraud invokes Rule 9(b) and insufficiently pleaded claim requires dismissal). Although scienter may be alleged generally, "simple allegations that defendants possess

fraudulent intent will not satisfy Rule 9(b)." *Mt. Olive*, 2016 WL 4494439, at \*5 (*citing Dorsey*, 540 F.3d 339).

Plaintiff's claims based on fraud fall short of this standard. As discussed above, Plaintiff merely alleges that Defendants—"misrepresented the insurance policy" and represented that the damage to the roof was man-made. Notably absent from Plaintiff's Amended Complaint is any specific discussion as to how Plaintiff relied upon the misrepresented statements. Therefore, Plaintiff's Amended Complaint fails to state a claim for fraud. Moreover, due to these same deficiencies, Plaintiff fails to allege sufficient facts to support its claim for negligent misrepresentation.

In sum, all of Plaintiff's claims against Crawford: (1) DTPA violations; (2) TIC and Unfair Insurance Practices; and (3) common law negligent misrepresentation and fraud claims fail to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Furthermore, Plaintiff fails to meet the heightened pleading requirement of Rule 9(b) as to Plaintiff's DTPA, and common law negligent misrepresentation and fraud claims. Because Plaintiff has failed to meet the requirements of Rule 12(b)(6) and alternatively Rule 9(b), this Court need not address the issue of reliance. Because a motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6), Defendant's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) is hereby **GRANTED**.

**D. Opportunity to Amend**

At the tail end of its response to Crawford's Motion to Dismiss, Plaintiff requests that the Court, if it holds that Plaintiff failed to plead sufficient facts as to Crawford, allow Plaintiff to file a third complaint. Pl.'s Resp. at 16-17. Plaintiff requests to "add in the minimal additional details that Crawford alleges it is lacking." *Id.* On October 31, 2016, Judge Robert Pitman entered a scheduling order requiring the parties to file any motions to amend pleadings on or before November 30, 2016. *See* ECF No. 13. Pursuant to that directive, Plaintiff amended on November 30, 2016. ECF No. 25.

"[A] party seeking to amend its pleadings after a deadline has passed must demonstrate good cause for needing an extension." *Hull v. City of New Orleans*, No. 16-30316, 2016 WL 7118474, at *1 (5th Cir. Dec. 6, 2016) (citing *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 333–34 (5th Cir. 2012)) *see Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 238 (5th Cir. 2015) ("because [Plaintiff] sought to amend his pleadings after the deadline set in the scheduling order, [Plaintiff] had to satisfy Rule 16(b)'s standard and again demonstrate that he could not reasonably have met this deadline despite exercising diligence."). Requesting leave to amend without showing good cause ensures denial of any such request. *See id.* Here, Plaintiff does not even attempt to establish good cause. This failure, standing alone, warrants denial of Plaintiff's request for leave to file a third complaint.

Plaintiff had multiple opportunities to establish good cause for an extension to amend its pleading. However, Plaintiff chose not to do so. Now, four months later, Plaintiff makes a perfunctory, one-sentence request to amend at the end of its response to Defendant's Motion to Dismiss. Plaintiff already amended its complaint on the last possible day permitted by the scheduling order. Moreover, under the local rules of the Western District of Texas CV-7(b),

when filing a motion for leave to amend, an executed copy of the proposed pleading must be filed as an exhibit to the motion for leave. Loc. R. CV-7(b). Here, Plaintiff attaches nothing to its request for leave, effectively blocking the Court from evaluating the merit of any proposed amendment.

Plaintiff made the strategic decision to forego any meaningful attempt to demonstrate good cause; rather, Plaintiff chose to rest on its First Amended Complaint and have this Court divert its resources to evaluating the Motion to Dismiss and Plaintiff's response thereto. By doing so, Plaintiff stands firmly on the pleadings set forth in its First Amended Complaint. Because Plaintiff: (1) fails to show good cause; and (2) fails to attach a proposed amendment or make any meaningful attempt to re-plead and correct its pleading errors, the Court **DENIES** Plaintiff's request for leave to file its Second Amended Complaint.

## IV. ORDER

For the reasons stated above, Crawford's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 37) is **GRANTED** and all claims as to Defendant Crawford are hereby **DISMISSED**.


**SIGNED** April 6, 2017.

_____
**JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**