UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **SPRING STREET APTS WACO, LLC,** Plaintiff, | § § § |
| v. | § § Case No. 6:16-CV-00315-JCM |
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY,** Defendant. | § § § § § |

## ORDER

Before the Court is Defendant's Motion to Limit the Testimony of Plaintiff's Experts, Lewis O'Leary and Daniel Smith, pursuant to Federal Rule of Evidence 702. ECF No. 50. The parties have consented to the jurisdiction of the undersigned in accordance with the provisions of 28 U.S.C. § 626(c), Federal Rule of Civil Procedure 73, and the Local Rules of the United States District Court for the Western District of Texas. *See* ECF Nos. 15, 16 and 18. For the reasons stated below, Defendant's Motion (ECF No. 50) is **GRANTED**.

## I. BACKGROUND

This suit involves an insurance claim for damages to Plaintiff's property. Philadelphia Indemnity Insurance Company ("Defendant") issued a Builder's Risk insurance policy covering from May 7, 2013, to May 7, 2014 (the "Policy") to Spring Street Apartments Waco, LLC ("Plaintiff"). *See* Pl.'s Am. Compl. ¶¶ 7-8, ECF No. 29. The Policy covered Plaintiff's apartment complex known as The Hype Apartments (the "Property"). *Id.* On April 15, 2014, Plaintiff submitted a claim to Defendant for roof and water damage sustained on at least 25 buildings on the Property. *Id.* ¶ 10. Plaintiff claims the damage resulted from severe weather, including damage sustained from winds and strong gusts, which occurred on March 28, 2014, and from a hailstorm that occurred on April 14, 2014. *Id.* ¶¶ 9-10.

1

In response to Plaintiff's claim, Defendant engaged Crawford & Company ("Crawford"), a national claim adjusting firm, to investigate and adjust Plaintiff's reported loss. *Id.* ¶ 11. Based on the adjuster's inspection of the Property, Crawford retained engineers to further inspect the Property. *See id.* ¶ 12. The engineers put forth their findings from the inspection in a report referred to as the "Donan Report." *Id.* Plaintiff asserts that the Donan Report contains numerous deficiencies. *Id.* ¶¶ 13-17.[1]

Plaintiff filed this lawsuit against Defendant in the 414th Judicial District of McLennan County, Texas, on June 30, 2016. ECF No. 1. On August 8, 2016, Defendant removed the case to the United States District Court for the Western District of Texas. ECF No. 1. On November 7, 2016, Defendant consented to the undersigned's jurisdiction. ECF No. 15.

On April 26, 2017, Defendant filed a motion pursuant to Rule 702 of the Federal Rules of Evidence seeking to limit the opinions of Plaintiff's proffered experts, Lewis O'Leary and Daniel Smith. Def.'s Mot., ECF No. 50. On May 10, 2017, Plaintiff filed a response to Defendant's motion Pl.'s Resp., ECF No. 52.

## II. DISCUSSION

Defendant requests this Court grant its Motion to Limit Testimony of Plaintiff's Experts Lewis O'Leary ("O'Leary") and Daniel Smith ("Smith"). Defendant seeks to limit O'Leary's and Smith's testimony under Rule 702 because:

> [t]he joint report from these experts and the estimate from Mr. O'Leary that followed all rely, in important part, on the opinions presented in the report of a meteorologist and

---

[1] The alleged deficiencies included: the failure to search for reports of severe weather for the dates preceding the date on which Plaintiff reported the damage; misrepresenting conversations that the engineers had with Plaintiff's representative, Mr. John Harvey; the unreasonable use of a limited definition of what constitutes wind damage; inadequately addressed any damage to the interior of the property; and improperly reported that long-term exposure to the elements caused the current condition of the Property's roofs. Pl.'s Am. Compl. ¶¶ 13-17.

retained expert whom Plaintiff has not designated, Stephen
Harned.

Def.'s Mot. at 1. In addition, Defendant seeks to limit O'Leary's and Smith's testimonies because Stephen Harned's ("Harned") opinions do not satisfy the evidentiary standards under Rule 702; therefore, O'Leary's and Smith's opinions that relied on Harned's opinions also do not satisfy the evidentiary standards under Rule 702. *Id.* at 1-2. In response, Plaintiff argues that Defendant's Motion should be denied because: (1) it is not in compliance with the Local Rules; and (2) Plaintiff's experts are entitled to rely on Harned's weather data. Pl.'s Resp. at 2.

Defendant argues that any of O'Leary's and Smith's opinions that were made by relying on Harned's opinions do not satisfy the evidentiary standards under Rule 702 because Harned's opinions do not satisfy the evidentiary standards under Rule 702.[2] Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A district court has considerable discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138– 42 (1997); *see also Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

In *Daubert*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993); *see also*

---

[2] In response to Defendant's Motion, Plaintiff first requests this Court deny Defendant's Motion for failure to comply with Local Rules. Though the Court admonishes Defendant to review and comply with the Local Rules, the Court will rule on the merits of Defendant's Motion. The Court will not be so lenient in the future.

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 146-47 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. *Daubert*, 509 U.S. at 589. Expert testimony is only admissible "if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Daubert* 509 U.S. at 589). First, the Court must determine whether the proffered expert testimony is reliable—that is, based on a scientifically valid methodology. *See Daubert*, 509 U.S. at 593. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590-93.

In *Daubert*, the Court offered a non-exclusive list of factors to consider, including whether the relied upon theory or technique: (1) has been or can be tested; (2) has been subject to peer review and publication; (3) has a known or potential rate of error; and (4) is generally accepted within the relevant community. *Id.* at 592-95. "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co.*, 526 U.S. at 153. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *Bourjay v. U.S.*, 483 U.S. 171, 171 (1987). Second, the Court must determine whether the expert's reasoning or methodology is relevant in that it "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at 591.

**A. Reliability of Harned's Expert Conclusions**

Stephen Harned received his B.A. in Meteorology from Florida State University in 1970. Pl.'s Resp. Ex. C. Currently, Harned is owner and president of Atlantic States Weather, Inc. where he provides meteorological consulting services to attorneys, insurance companies, engineers, architects, government agencies, and private citizens. *Id.* Before he began consulting, Harned worked for the National Weather Service for thirty years. *Id.* Harned also served as executive director of the National Weather Association, one of the two professional associations for meteorologists in the United States. *Id.* Further, Harned has authored and edited numerous journal articles relating to the field of meteorology. *Id.* Harned has received numerous awards in the field of meteorology and is clearly well versed in the subject matter. *Id.* For purposes of the instant motion, Defendant does not contest Harned's qualifications as a meteorologist. *See* Def.'s Mot.

On May 2, 2017, Harned wrote a report analyzing the wind gusts at the Property for April 1, 2013 through April 14, 2014 plus rainfall for March 28 through April 14, 2014. Pl.'s Resp. Ex. C. The report explained Harned's technical analysis of observed weather data which led to his determinations of the maximum wind gust speeds at the Property between April 1, 2013 and April 14, 2014. *Id.* To reconstruct the wind gust speed at the Property Harned analyzed "archived observations from the National Weather Service (NWS) supervised weather observing system at the Waco Regional Airport and Doppler radar reflectivity images from the Ft. Hood Doppler radar." *Id.* The NWS supervised weather observing system at the Waco Regional Airport documents wind gust speeds taken at the airport. *Id.* Harned used the Doppler images to determine the strength of storms at the airport when the highest wind gust speeds were recorded. *Id.* Then Harned would look at Doppler images to determine if the storm was the same strength

at the Property as the airport.[3] *Id.* On October 12, 2013 and March 28, 2014, he found the storm was stronger at the Property than at the airport. *Id.* From there, Harned determined that the winds were higher at the Property than the recorded wind gusts at the airport. *Id.* Harned opined that the maximum wind gust speed at the Property on March 28, 2014 was 55 mph. *Id.* The highest wind gust speed recorded at the airport on March 28, 2014 was 49 mph. *Id.* Harned failed to include the method he used to calculate the increase in wind gust speed from the speed taken at the airport to the maximum wind gust speed he determined for the Property.

Defendant argues that Harned's testimony is not the product of reliable principles and methods under Rule 702. Def.'s Mot. at 11. As an initial matter, Defendant objects to Harned's opinion regarding the wind speed data for the Property. *Id.* Defendant contends that Harned wholly failed to explain the methodology he used to extrapolate wind speed from the Waco Regional Airport (located eight miles away from the Property), or how he corrected for the differences in topography, elevation, and terrain between the disparate sites. Def.'s Reply, ECF No. 55 at 2. Defendant further asserts that Harned also failed to explain the methodology he used to extrapolate wind data from Doppler Weather Radar. *Id.* Overall, Defendant argues that Plaintiff has not met its burden to show that Harned's opinions are supported by a reliable technique, theory, or methodology, and, therefore, fails to show that Harned's opinions are reliable. The undersigned will address each argument in turn.

First, the reliability prong requires that an expert opinion "be grounded in the methods and procedures of science." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The Fifth Circuit has held that "[t]his requires some objective, independent validation of the expert's methodology." *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 771 (5th Cir.

---

[3] For example, if red pixels passed over the airport when the highest wind gust speed was taken for a storm and red pixels passed over the Property, then Harned determined the wind gust speed at the Property was very similar to the speed taken at the airport. Pl.'s Resp. Ex. C.

2017) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). If the expert lacks some objective, independent validation of his methodology, it is not helpful to the factfinder and should be excluded. *Kovaly v. Wal-Mart Stores Tex., L.L.C.*, 627 F. App'x 288, 290 (5th Cir. 2015). In *Daubert*, on remand from the Supreme Court, the Ninth Circuit held that an expert may satisfy the reliability prong by:

> explaining precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field.

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand).[4] "The expert's assurances that he has utilized generally accepted [principles] is insufficient." *Brown v. Illinois Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (citing *Moore*, 151 F.3d at 276).

In *Sec. & Exch. Comm'n*, the Fifth Circuit reviewed the trial court's admission of the defendant's expert testimony. *Sec. & Exch. Comm'n*, 854 F.3d at 775. The appellant claimed that the trial court erred in allowing the expert testimony because the testimony was not based on recognized methods that had been tested, subject to peer review and publication, or been generally accepted by the community. *Id.* at 776. However, the expert had explained his analyses in detail and indicated that his analysis was governed by Actuarial Standards Board ("ASB"). *Id.* Additionally, the record included an ASB document of a proposed standard of practice that was subsequently adopted by the ASB, and the expert's analysis appeared to be consistent with the standard laid out in the document. *Id.* The Fifth Circuit found that the trial court had not erred in

---

[4] The Fifth Circuit has adopted the Ninth Circuit's requirement in *Daubert* of an objective, independent validation of the expert's methodology. *Life Partners*, 854 F.3d at 771 n.5.

7

allowing the testimony because the ASB document was the kind of objective, independent validation of the expert's methodology that was referenced in *Daubert*. *Id.* at 776-77.

Here, the situation in *Sec. & Exch. Comm'n* does not exist. Harned purports to find the wind speed at the Property by using the weather observing system at the Waco Regional Airport and Doppler Radar reflectivity images from the Ft. Hood Doppler Radar. Pl.'s Resp. Ex. C.[5] Harned's report explained:

> [t]he methodologies used for this report are generally accepted meteorological analytic procedures for analyzing airport weather observations and WSR-88D Doppler radar output as they relate to wind gusts, rainfall, and wind direction.

Pl.'s Resp. Ex. C. However, noticeably absent from Harned's report are: (1) citations to journal articles; (2) policy statements of professional associations; or (3) learned treatises. In fact, Harned failed to point to any objective, independent validation of his methodologies anywhere in his report, unlike the expert in *Sec. & Exch. Comm'n*. Nor did Plaintiff provide any objective, independent validation of Harned's methodologies in its response to Defendant's motion. Plaintiff explained:

> [t]he methodologies used by Harned are generally accepted meteorological analytic procedures supported in literature and professional training courses for analyzing airport weather observations and WSR-88D Doppler radar output as they relate to wind gusts, rainfall, and wind direction.

Pl.'s Resp. at 6. Plaintiff, however, only points back to Harned's report as "proof" that Harned's methodologies are generally accepted meteorological analytic procedures. *Id.*

Plaintiff then attempts to use Defendant's rebuttal witness, Tim Marshall ("Marshall"), as objective, independent validation of Harned's methodology by asserting that "Tim Marshall's

---

[5] Harned also purports to have reconstructed rainfall amounts at the Property between March 28 and April 14, 2014. Pl.'s Resp. Ex. "C." However, Harned again fails to provide objective, independent validation of this methodology anywhere in his report.

Hagg Engineering recognizes Doppler Data as a reliable method for analyzing wind change" and citing excerpts from a "Hagg Certified Inspector – Wind Damage Course Workbook." *Id.* at 7. While both Marshall and the workbook excerpts express that Doppler Data is a reliable method for analyzing wind damage, neither Marshall nor the workbook discuss how wind speeds at a specific location can be extrapolated from wind speeds taken at another location by using the Doppler Weather Radar. In fact, Marshall directly contests this by noting that "there is no known, scientific methodology to take single Doppler Weather Radar velocities and determine wind speeds at specific locations on the ground." Def.'s Mot. at 8.

Plaintiff also attempts to use its own expert witness, O'Leary, to provide objective, independent validation of Harned's methodologies. However, one must be an expert in a particular field to offer opinions on the standards within that field. *See Cleveland v. U.S.*, 457 F.3d 397, 404-05 (5th Cir. 2006). O'Leary is not a credentialed meteorologist or peer of Harned, nor has Plaintiff designated O'Leary as a meteorologist. ECF No. 48. In fact, Plaintiff designated O'Leary as "an expert in Technically Exhaustive Property Condition Assessments, also known as Field Engineering." *Id.* While extensively educated in the field of engineering, O'Leary has no meteorological education or training.[6] Thus, because O'Leary lacks the credentials and qualifications to be qualified as an expert in meteorology, he cannot verify or validate whether Harned's methodologies are standard in the meteorological field. Because Plaintiff fails to provide objective, independent validation of Harned's methodology, Plaintiff fails to meet its burden to show that Harned's methodologies, and resulting opinions, are reliable.

---

[6] O'Leary's formal education consists of a General Engineering Degree from Miss. Gulf Coast College in 1967 and a Bachelor's Degree in Mechanical Engineering and Architecture from Miss. State University in 1972. ECF. No. 48 Ex. "A." O'Leary's technical training includes HAAG Engineering certified Inspector Licenses, Roofing Consultants Institute Seminars, Building Envelop Science Institute and Damage Assessment Schools, Field Training and Related Academics regarding: (1) roof systems; (2) metal buildings; (3) mold and moisture assessment; (4) concrete foundations and structures; and (5) synthetic and cement plaster and masonry construction. *Id.*

In addition, Plaintiff fails to establish the reliability of Harned's opinions according to the factors listed in *Daubert*.[7] In *Daubert*, the Court offered a non-exclusive list of factors to consider, including whether the relied upon theory or technique: (1) has been or can be tested; (2) has been subject to peer review and publication; (3) has a known or potential rate of error; and (4) is generally accepted within the relevant community. *Daubert*, 509 U.S. at 592-95. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *Bourjay v. U.S.*, 483 U.S. 171, 171 (1987).

Having carefully reviewed all exhibits and considering the arguments of both parties, the Court finds that Plaintiff's position is unpersuasive because there is no evidence Harned's methods have ever been tested, submitted for peer review, or are generally accepted within the meteorological community. Plaintiff has failed to offer any studies to support Harned's methodologies. Plaintiff has also not shown if Harned's methods have been tested or peer reviewed, nor has Plaintiff shown that Harned's methods have an error rate. Additionally, Plaintiff's only support for its assertion that Harned's methods are generally accepted in the meteorological community is Harned's own assurances.[8]

Finally, Harned offers no method or calculation for how he determined the appropriate amount to increase the wind gust speed taken at the airport to the maximum wind gust speed he

---

[7] Parties fail to cite any case law from the Fifth Circuit (or any circuit for that matter) showing that Harned's method of determining wind speeds at specific locations using Doppler radar is deemed reliable within the meteorological field. After conducting independent research on the matter, the undersigned finds that while there are some cases within the Fifth Circuit that condone Harned's methodology, said cases did not expressly apply the *Daubert* factors as laid out by the Supreme Court. *See Medical Plaza, LLC v. U.S. Fidelity and Guar. Co.*, No. 1:07CV098 LTS-RHW, 2008 WL 4539587 (S.D. Miss. Oct. 7, 2008); *see also Bossier v. State Farm Fire and Cas. Co.*, No. 1:08CV408LTS-RHW, 2009 WL 3271880 (S.D. Miss. Oct. 9, 2009). Although considered by the Court, the Court finds the analysis behind these decisions unpersuasive.

[8] An expert's assurances that he has utilized generally accepted methodology is insufficient to satisfy the requirement for objective, independent validation of the expert's methodology. *Moore*, 151 F.3d at 276.

determined for the Property. Simply put, Plaintiff fails to meet its burden to show that Harned's opinions are reliable. Because Plaintiff fails to: (1) show objective, independent validation of Harned's methods; and (2) fails to show that Harned's methods meet any of the factors outlined in *Daubert* for determining the reliability of an expert's opinion, the undersigned finds that Harned's methods are unreliable.

**B. Reliability of O'Leary's and Smith's Expert Testimonies**

Defendant argues that O'Leary's and Smith's testimonies are, in part, not based on sufficient facts and data under Rule 702. Def.'s Mot. at 11. Defendant argues that because Harned's opinions are unreliable, any opinions by O'Leary and Smith that rely on Harned's opinions are also unreliable. Def.'s Mot. at 11. Under Rule 702, an expert may only testify if the testimony is based on sufficient facts or data. Fed. R. Evid. 702. The party seeking to introduce the expert testimony bears the burden of proving by a preponderance that the proffered testimony satisfies the Rule 702 test, including that the conclusions were based on sufficient facts or data. *Mathis*, 302 F.3d at 461-62. If the foundational data underlying opinion testimony is unreliable, an expert will not be permitted to base an opinion on that data because any opinion from that data is likewise unreliable. *Timoschuk v. Daimler Trucks N. Am., LLC*, No. SA-12-CV-816-XR, 2014 WL 1533789 at *3 (W.D. Tex. June 4, 2014) (citing *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)). Because Harned's opinions are unreliable, any opinions made by O'Leary and Smith based on Harned's opinions are likewise unreliable. Therefore, any testimony from O'Leary and Smith based on Harned's opinions is inadmissible and excluded.

## III. CONCLUSION

Plaintiff fails to: (1) provide objective, independent validation of Harned's methodology; and (2) show that Harned's methods meet any of the factors outlined in *Daubert* for determining the reliability of an expert's opinion. Therefore, Plaintiff fails to meet its burden to show that Harned's methodologies, and resulting opinions, are reliable. Additionally, because Harned's opinions are unreliable, any opinions made by O'Leary and Smith based on Harned's opinions are likewise unreliable. Thus, any testimony from O'Leary and Smith based on Harned's opinions is inadmissible and excluded.

## IV. ORDER

It is therefore **ORDERED** that Defendant's Motion to Limit Testimony of Plaintiff's Experts Lewis O'Leary and Daniel Smith (ECF No. 50) is **GRANTED**, consistent with the Order and findings set forth herein.

**SIGNED** June 28, 2017.

_____
**JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**