IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **SPRING STREET APTS WACO, LLC**, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CASE NO. 6:16-cv-00315- RP-JCM |
| | § | |
| **PHILADELPHIA INDEMNITY** | § | |
| **INSURANCE COMPANY and** | § | |
| **CRAWFORD & COMPANY**, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL BETTER DISCOVERY RESPONSES AND/OR OVERRULE OBJECTIONS**

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

Defendant Philadelphia Indemnity Insurance Company ("Philadelphia"), through the undersigned counsel, files this Response to *Plaintiff's Motion to Compel Better Discovery Responses and/or Overrule Objections* (Doc. # 67), filed in this case by Plaintiff Spring Street Apts Waco, LLC ("Plaintiff").

**I.**
**SUMMARY OF THE RESPONSE AND RELIEF SOUGHT**

1. Plaintiff has asked the Court to compel Philadelphia to produce documents it exchanged internally and with its attorney relating to fraud counterclaims Philadelphia filed. Philadelphia timely objected to the discovery requests, asserting the attorney-client communications and attorney work product privileges, as Philadelphia's decision to file the counterclaims post-dated Plaintiff's

filing of this lawsuit. Philadelphia also objected to the requests on relevance grounds, since the counterclaims are no longer at issue in the case: the Court granted Plaintiff's motion to dismiss the counterclaims.

2. Because Plaintiff has failed to show any applicable exception to the privileges, or to effectively rebut Philadelphia's relevance objections, the Court should deny Plaintiff's motion.

## II.
### FACTUAL BACKGROUND

3. Plaintiff sued Philadelphia and to recover additional insurance benefits under a builder's risk policy on Plaintiff's apartment complex. Philadelphia timely acknowledged the claim, retained an independent adjuster to inspect the property and adjust the loss. Philadelphia then retained an engineer to inspect the property. Philadelphia paid policy benefits for the damages the adjuster recommended, even though the engineer found less property damage. Philadelphia explained the basis of its coverage determination and sent Plaintiff copies of the adjuster's estimate and the engineer's report.

4. Plaintiff maintains that Philadelphia should have paid upwards of a million dollars to replace the roofs on all 25 insured buildings, down to the insulation in the attics. The parties unsuccessfully tried to resolve the dispute at a pre-suit mediation. Philadelphia thereupon retained Timothy P. Marshall, P.E. of Haag Engineering to obtain a second engineering opinion.

5. Before Mr. Marshall could inspect the property, Plaintiff replaced the roofs on all the buildings with higher quality materials and performed several other upgrades. Even though Mr. Marshall could not inspect the property in its pre-repair condition, he reviewed all the documentary evidence collected from the previous inspections, including an extensive photographic record. He also observed other components of the property, such as the shingle roof coverings atop mailbox kiosks that Plaintiff had not replaced.

6. A licensed meteorologist, Mr. Marshall also analyzed area weather data during the relevant time period. He issued his initial report on November 3, 2016. That report concludes that what Plaintiff initially reported as "hail damage" that occurred on April 14, 2014, and Plaintiff alleges in this lawsuit was damage from "extraordinary sustained winds and strong gusts" on March 28, 2014, was actually caused by "mechanical means" – an engineering term for man-made damage. Philadelphia produced the Marshall report to Plaintiff's counsel on November 6, 2015.

7. On June 30, 2016, Plaintiff sued Philadelphia for breach of contract statutory and common-law bad faith and unfair insurance practices, negligent misrepresentation, and fraud.

8. On November 22, 2016, Philadelphia filed a First Amended Answer and Original Counterclaim against Plaintiff. That pleading instrument explained that the counterclaim for fraud was based solely on the opinion in the report

Timothy Marshall issued 19 days earlier that the damage to the roof shingles was man-made.

9. On April 5, 2017, the Court granted Plaintiff's motion to dismiss Philadelphia's fraud counterclaims. The Court's order explains that the economic loss doctrine barred Philadelphia's recovery. (Doc. #45.)

10. On April 19, 2017, two weeks *after* the Court dismissed the counterclaims, Plaintiff served written discovery asking Philadelphia to produce all of its internal communications and those communications with the independent adjusting firm pertaining to the counterclaims. Although Plaintiff had sued that adjusting firm, Crawford & Company ("Crawford"), the Court dismissed all of Plaintiff's claims against Crawford on April 6, 2017. (Doc. #46.)

11. The document requests at issue read as follows:

**Request No. 26:**

All documents relating to Your decision to pursue a counterclaim against Plaintiff for fraud and conspiracy to commit fraud, including, but not limited to, all correspondences or other documents exchanged internally or between You and Crawford & Company.

**Request No. 27:**

All documents relating to any mechanical or "man-made" damage on the Property as it concerns the Claim, including, but not limited to, all correspondences or other documents exchanged internally or between You and Crawford & Company.

**Request No. 28:**

All documents relating to any alleged fraud committed by Plaintiff and/or its agents, representatives or employees as it concerns the Claim, including, but not limited to, all correspondences or other documents exchanged internally or between You and Crawford & Company.

Exhibit A at 6.

12. With respect to the requests for documents "exchanged internally or between You," a definitions section included with Plaintiff's request for production defined the term "you" to mean "Philadelphia Indemnity Insurance Company, *and all attorneys* . . . acting or purporting to act for or [its] behalf." *See* Exhibit A at 2 (emphasis added).

13. Philadelphia's responses referred Plaintiff "to the reports issued by Timothy P. Marshall, P.E. of Haag Engineering, Inc."[1] *See* Ex. B to Plaintiff's Motion. With limited exceptions not applicable here, Federal Rule of Civil Procedure 26(b)(3)(A)-(B) "protect communications between a party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications." FED. R. CIV. P. 26(b)(4)(C).

14. Philadelphia has no responsive documents pertaining to any communications with Crawford, other than a short email chain (which Philadelphia produced). In those emails, counsel for Philadelphia simply asked Crawford's attorney:

> Can you please confirm that you do not object to Philadelphia filed a motion for leave to amend its pleadings. We will fine-tune our Answer by asserting additional affirmative defenses (and providing a federal-court point-by-point denial), and most significantly, *asserting a counterclaim for fraud and conspiracy to*

---

[1] Mr. Marshall subsequently prepared a supplemental report, critiquing the methodology of a meteorologist upon whose unreliable opinions Plaintiff's designated experts sought to rely. The Court Order limiting the opinions of those designated experts (Doc. #69) shows that the Court already reviewed that supplemental report, which did not directly address the findings that the roof damage was man-made.

*commit fraud based on the findings of the engineer whose report I sent Mike last week.* (Emphasis added.)

Crawford's attorney replied by stating she did not oppose the motion for leave.

15. Philadelphia objected to Plaintiff's requests for production by asserting that they sought protected work product and attorney-client communications. *See* Ex. B to Plaintiff's Motion. Philadelphia also objected on the basis of relevance, given the dismissal of the fraud counterclaims. *Id.* ("In light of the fact that the Court dismissed Philadelphia's counterclaims on April 5, 2017, Philadelphia objects to this request on the grounds it seeks information and documents that are not relevant to the matters that form the basis of this lawsuit or reasonably calculated to lead to the discovery of admissible evidence.")

16. Plaintiff's motion argues that the Court should overrule Philadelphia's objections and ignore the privileges asserted, without articulating a valid exception. Conclusory statements aside, Plaintiff has not and cannot show a substantial need for these internally exchanged litigation materials or an undue hardship resulting from Philadelphia's failure to produce them. Plaintiff's motion should therefore be denied.

### III.
### LEGAL STANDARD

17. The Court has broad discretion when deciding discovery matters, and its decision whether to grant or deny a motion to compel discovery is reviewed under the abuse of discretion standard. *McCollum v. Puckett Machinery Co.*, 628 Fed. Appx. 225, 227 (5th Cir. 2015).

# IV.

## ARGUMENT AND AUTHORITIES

**A. Plaintiff's motion incorrectly relies upon federal law.**

18. As a preliminary matter, Plaintiff's motion should be denied because it is based on inapposite law. State law governs discovery privileges in diversity cases. *Garza v. Scott & White Mem. Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005) (citing *In re Avantel, S.A.*, 343 F.3d 311, 318 n.6 (5th Cir. 2003) ("Rule 501, Fed. R. Evid., provides that in cases where state law supplies the rule of the decision, such as this diversity-jurisdiction matter, the 'privilege of a witness, person, government, State, or political sub-division thereof shall be determined in accordance with State law.' Accordingly, Texas privilege law applies here.") (citing Fed. R. Evid. 501)).

**B. Communications within Philadelphia or with its attorney, pertaining to Philadelphia's counterclaims for fraud, are exempt from discovery pursuant to the attorney-client communications and attorney work-product privileges.**

19. The Waco Court of Appeals has provided a concise explanation of the attorney-client privilege under Texas law:

> "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." TEX. R. EVID. 503(b). The purpose of the attorney-client privilege is to secure the free flow of information between attorney and client on legal matters, without the fear that details of their communication will be disclosed. *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex. 1995); *In re Bloomfield Mfg. Co.*, 977 S.W.2d 389, 392 (Tex. App.—San Antonio 1998, orig. proceeding).
>
> * * *
>
> Effective March 1, 1998, Rule of Evidence 503 was amended to adopt the "subject matter" test for an entity's assertion of the privilege,

replacing the "control group" test previously used. TEX. R. EVID. 503(a)(2) & cmt; *National Tank Co. v. Brotherton,* 851 S.W.2d 193, 197–98 (Tex.1993). Under the subject-matter test, an employee's communication is deemed to be that of the corporation/client if:

> the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment.
>
> *National Tank*, 851 S.W.2d at 198 (quoting *Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487, 491-92 (7th Cir.1970), *aff'd per curiam by an equally divided court,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971)).

*In re Monsanto Co.*, 998 S.W.2d 917, 922-23 (Tex. App.—Waco 1999, orig. proceeding).

20. Another Texas court of appeals recently discussed the work-product privilege in some detail, as follows:

> Rule 192.5 provides in relevant part:
>
> (a) *Work Product Defined.* Work product comprises:
>
> (1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or
>
> (2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.
>
> (b) *Protection of Work Product.*
>
> (1) Protection of Core Work Product—Attorney Mental Processes. Core work product—the work product of an attorney or an attorney's representative that contains the attorney's or

> the attorney's representative's mental impressions, opinions, conclusions, or legal theories—is not discoverable.
>
> (2) Protection of Other Work Product. Any other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means.
>
> Tex. R. Civ. P. 192.5. Thus, Rule 192.5 protects all materials developed and all communications made by a party's employees in anticipation of litigation.
>
> * * *
>
> The work product privilege extends both to documents actually created by the attorney and to memoranda, reports, notes, or summaries prepared by other individuals for the attorney's use. *GAF Corp. v. Caldwell*, 839 S.W.2d 149, 151 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding); *In re McDaniel*, No. 14-13-00127-CV, 2013 WL 1279454, at *3 (Tex. App.—Houston [14th Dist.] Mar. 28, 2013, orig. proceeding) (per curiam) (mem. op.) (rejecting argument that data created by a third party cannot be considered attorney work product).

*In re Fairway Methanol LLC*, 515 S.W.3d 480, 489-90 (Tex. App.—Houston [14th Dist.] 2017) (orig. proceeding).

21. Federal courts have applied these standards. *See, e.g.*, *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 23-24 (S.D. Tex. 2009) (explaining that Texas Rule of Evidence 503 "protects the complete communication between the attorney and his client, including legal advice and factual information") (citing *Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 589 (Texas App.—Dallas 1994, no pet.)).

22. If a court decides that the attorney-client privilege applies, the court does not reach the question whether the work product doctrine applies. *Upjohn Co.*

*v. U.S.*, 449 U.S. 383, 397 (1981); *Swidler Berlin v. United States*, 524 U.S. 399, 401 n. 1 (1998) ("Because we sustain the claim of attorney-client privilege, we do not reach the claim of work product privilege.").

23. An one federal district court in Texas has explained:

> The work-product doctrine provides qualified protection of documents and tangible things prepared in anticipation of litigation, including "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Dunn v. State Farm Fire Cas. Co.*, 927 F.2d 869, 875 (5th Cir, 1991) . . . The party who asserts work-product protection must show that the materials warrant work-product protection. *Hodges, Grant Kauffmann v. United States*, 768 F.2d 719, 721 (5th Cir, 1985). Four elements must be established. First, the materials must be documents or tangible things. 8 Charles Alan Wright, Arthur R. Miller Richard L. Marcus, *Federal Practice Procedure* § 2024, at 336 (2d ed. 1994). Second the materials must be prepared in anticipation of litigation for trial. In other words, the party had reason to anticipate litigation and "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum Chem. Co.*, 214 F.2d 586, 593 (5th Cir. 2000) (citation and footnote omitted. Third, the materials must be prepared by or for a party's representative. Fed. R. Civ. P. 26(b)(3). Fourth, if the party seeks to show that material is opinion work-product, that party must show that the material contains mental impressions, conclusion, opinions or legal theories of an attorney or other representative of a party. *Id.*; *see In re Int'l Sys. Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982).

*Ferko v. Nat'l Assn. for Stock Car Auto Racing Inc.*, 218 F.R.D. 125, 136 (E.D. Tex. 2003).

24. Philadelphia's internal communications, and its communications with its attorneys, regarding the decision to file the counterclaim — all of which

obviously occurred after Plaintiff filed suit[2] —fall squarely within the attorney-client and work product privileges. *See* Doc. #67 at 4 (quoting Request No. 26 and Philadelphia's response); Doc. #23 at 22-42.

25. Likewise, correspondence and documents Philadelphia relayed internally or exchanged with its attorneys, concerning mechanical or "man-made" damage that was disclosed in the Marshall report in November 2016, also fall within those privileges: This is the issue that led Philadelphia to assert the since-dismissed counterclaims. (*See* Doc. #67 at 4) (quoting Request No. 27 and Philadelphia's response); Doc. #23 at 22-42.)

26. Finally, communications pertaining to "any fraud committed by Plaintiff" also fall within the privileges asserted because, once again, these documents concern the counterclaims Philadelphia filed more than four months after Plaintiff filed suit. (*See* Doc. #67 at 3-4 (quoting Request No. 28 and Philadelphia's response); Doc. #23 at 22-42.)

27. In an attempt to overcome the assertion of privilege, Plaintiff argues it is entitled to the requested documents based on "a substantial need" and a

---

[2] On November 14, 2016, Philadelphia filed an Opposed Motion for Leave to File Counterclaim Against Plaintiff (Doc. #20). The proposed Original Counterclaim attached to that motion, and later filed, explained that Philadelphia's counterclaims were "based upon the report, by a professional engineer and certified meteorologist, which concludes that the damage to the roofs of the buildings Defendant insured and which Plaintiff alleges was caused by wind, 'was done recently by mechanical means [*i.e.*, man-made], not wind.'" That motion followed the expert's issuance of a report 11 days earlier – and five months after Plaintiff commenced this lawsuit, on June 30, 2016.

"compelling need" for them. However, Plaintiff has not articulated this need with any particularity. (*E.g.*, Doc. #67 at 8, 9.)

28. Plaintiff's conclusory allegations are insufficient. As one Texas appeals court explained earlier this year:

> The party seeking discovery of non-core work product labors under a heavy burden to show both that a substantial need for the materials exists and that materials equivalent to those sought cannot be obtained without substantial hardship. *In re Small*, 346 S.W.3d 657, 668 (Tex. App.—El Paso 2009, orig. proceeding); *In re McDaniel*, No. 14–13–00127–CV, 2013 WL 1279454, at *3 (Tex. App.—Houston [14th Dist.] Mar. 28, 2013, orig. proceeding) (mem. op.). Factual information may be obtained by means other than requiring production of privileged documents. *In re ExxonMobil Corp.*, 97 S.W.3d 353, 358 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

*In re Fairway Methanol LLC*, 515 S.W.3d 480, 493 (Tex. App.—Houston [14th Dist.] 2017) (orig. proceeding).

29. Other than quoting its bad faith expert and listing its contractual and extra-contractual claims against Philadelphia, Plaintiff wholly fails to demonstrate with any particularity <u>why</u> it "substantially needs" this information to prosecute its claims. Plaintiff neither make any showing of substantial need or hardship, or demonstrates why Philadelphia's privileged information is necessary for Plaintiff to prosecute its claims.

**C.   In the alternative, because the Court dismissed Philadelphia's counterclaims, information and documents pertaining to the counterclaim are not relevant to the matters made the basis of this lawsuit.**

30. Philadelphia timely lodged a relevance objection to Request Nos. 26 and 28, which sought communications and other documents related to any fraud by

Plaintiffs (Request No. 28) and Philadelphia's decision to file its fraud counterclaim (Request No. 27). *See* Exhibit A.

31. Information is discoverable only if it is relevant to the claims or defenses of a party. FED. R. CIV. P. 26(b)(1). Because the Court dismissed Philadelphia's counterclaim, Philadelphia's internal communications and its communications with its attorneys, and documents relating to those communications, are not at issue in this case. *See* FED. R. EVID. 401, 402. Furthermore, reference to such matters would be highly prejudicial and confusing to a jury. The Court dismissed the counterclaims as a matter of law; the correspondence and documents Plaintiff seeks pertaining to the dismissed claims are of no probative value to the claims remaining in this lawsuit. *See* FED. R. EVID. 403.

## PRAYER

FOR THESE REASONS, Defendant Philadelphia Indemnity Insurance Company respectfully requests that his Court deny Plaintiff's Motion to Compel Better Discovery Responses and/or Overrule Objections.

Respectfully submitted,

    */s/ William R. Pilat*
William R. Pilat
Texas Bar No. 00788205
Admitted in Western District of Texas
KANE RUSSELL COLEMAN & LOGAN PC
5051 Westheimer Road, 10th Floor
Houston, Texas 77056
Telephone: 713-425-7400
Facsimile: 713-425-7700
E-mail: wpilat@krcl.com

ATTORNEY-IN-CHARGE FOR DEFENDANT
PHILADELPHIA INDEMNITY INSURANCE COMPANY

**OF COUNSEL:**

John P. Palmer
Texas Bar No. 15430600
Admitted in Western District of Texas
NAMAN, HOWELL, SMITH & LEE, PLLC
P.O. Box 1470
Waco, Texas 76703-1470
Telephone: 254-755-4100
Facsimile: 254-754-6331
E-mail: palmer@namanhowell.com

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL
BETTER DISCOVERY ANSWERS AND/OR OVERRULE OBJECTIONS**     **PAGE 14**

5409547 (55220.00174.000)

## CERTIFICATE OF SERVICE

I certify that on July 3, 2017, a true and correct copy of the foregoing *Defendant's Response to Plaintiff's Motion to Compel Better Discovery Answers and/or Overrule Objections* was forwarded to all other counsel of record, as listed below, through the electronic case filing system that serves the United States District Courts for the Western District of Texas.

Sean Bukowski
BUKOWSKI LAW FIRM, P.C.
815 Brazos Street, Suite 400
Austin, Texas 78701

John P. Palmer
NAMAN, HOWELL, SMITH & LEE, PLLC
P.O. Box 1470
Waco, Texas 76703-1470

           */s/ William R. Pilat*
           William R. Pilat

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL
BETTER DISCOVERY ANSWERS AND/OR OVERRULE OBJECTIONS**     **PAGE 15**

5409547 (55220.00174.000)